THE CHICAGO MUNICIPAL GAS LIGHT AND FUEL COMPANY

*v.*

THE TOWN OF LAKE.

*Filed at Ottawa October 31, 1889.*

1. FRANCHISE—*defined—and how determined.* A franchise is a particular privilege conferred by grant from a sovereign or government, and vested in individuals or a corporation. The franchise of a private corporation organized under the general law is to be ascertained from the objects of the corporation, as stated in its articles of incorporation.

2. MUNICIPAL CORPORATIONS—*use of streets—charter powers to gas company.* By section 5 of the general Incorporation act, a corporation

130 — 42
203 ⁴372
130 — 42
212 ⁴592

organized under that act for the purpose of the manufacture and sale of gas for illuminating and heating purposes in a city, is vested with all the powers necessary and requisite to carry into effect the objects for which it was formed ; but the State does not thereby grant to the company a special privilege or franchise to occupy and use public streets of the city for the purpose of laying therein its mains and gas pipes.

3.  SAME—*use of streets—powers of municipality—granting use for laying gas pipes, etc.*  Under the power conferred by statute upon a city or town to control and regulate the streets, etc., within its limits, and to abate nuisances, such city or town may lawfully permit any use of such streets and alleys that is consistent with the public objects for which they are held, and may make a grant of the right of way for the purpose of laying gas pipes and mains under the surface thereof.

4.  SAME—*ordinance—granting use of streets—whether a contract, or a mere license.*  The privilege of the use of the streets of a city or town, when granted by ordinance, is not always a mere license, and revocable at pleasure.  If the grant is for an adequate consideration, and is accepted by the grantee, then the ordinance ceases to be a mere license, and becomes a valid and binding contract.  And the same result is reached where, in case of a mere license, it is, prior to its revocation, acted upon in some substantial manner, so that to revoke it would be inequitable and unjust.

5.  SAME—*use of streets—granted to gas company—grant considered a contract.*  The corporate authorities of a town passed an ordinance giving a gas company the privilege to lay its gas mains and pipes in any and all of the streets, alleys and other public grounds, and the right to maintain and repair the same.  In a few days thereafter the gas company executed a written acceptance of the ordinance, which the board of trustees spread upon the journal of their proceedings, and the company then undertook to perform its agreement, under which the privileges were granted.  A new board of trustees was elected, who passed an ordinance expressly repealing the former one :  *Held,* that the contract between the town and the company being a valid one, the repealing ordinance was void.

6.  SAME—*grant of use of streets to gas company—rights incident thereto.*  The board of trustees of a town, by ordinance, granted to a gas company the privilege of laying its mains, pipes, etc., in the streets, alleys and public grounds, upon the condition that the company should commence furnishing gas within one year thereafter, and fixing the price of gas to consumers:  *Held,* that the gas company had the legal right to acquire, by lease or purchase, a gas plant to subserve the purpose of its incorporation, and thus enable it to comply with the conditions upon which it was granted the privilege of laying its pipes, etc., in the streets.

7.  SAME— *contract of gas company not performed in proper time— right to use of streets thereby defeated.* A municipal corporation granted a gas company permission to lay its mains, pipes, etc., in the streets and alleys, upon condition that the latter should commence furnishing gas within one year. A railway company in the same town leased its building and premises, used as gas works, to S., for the term of two years, who was to put into use therein his new process and apparatus for making gas, and furnish the railway company, during the two years, all the gas it required in its shops and houses. By this lease, the latter company, at the end of the term, had the option or right to take the plant at its net cost, for its own exclusive use. The new gas works were completed within one year after the contract with the town, and S. assigned his lease to the gas company for certain shares of its stock, and the gas company, after the time limited in its contract for commencing to furnish' the town with gas, undertook to lay its mains, pipes, etc., in the streets of the town, which the town authorities prevented, and the gas company filed its bill against the town, seeking to specifically enforce its contract: *Held,* that the bill would not lie, for the reason that the gas company had not, within one year, substantially performed the condition upon which its rights depended.

8.  In such case, the lease and contract with the railway company had reference to lighting only the railroad buildings and grounds, and did not contemplate the manufacture of gas for public use and consumption, and the lease, on its face, was temporary and provisional, only, in its character, and was made for the purpose of testing the new process of making gas. Such a lease was not of the character contemplated by the contract, under the ordinance, with the town.

9.  SPECIFIC PERFORMANCE—*discretionary.* The exercise of the jurisdiction to enforce the specific performance of a contract rests in the sound legal discretion of the court, in view of the terms of the contract and all the surrounding circumstances.

10.  SAME—*performance essential.* In order to entitle a party to have the specific performance of a contract, he must show that the contract has been fully and fairly, and in good faith, performed on his part. If the terms of the contract have not been fully performed by the complainant, or are incapable of being substantially performed by him, a court of equity will not interfere.

11.  The complainant must not only show that he has complied with the terms of the contract, as far as they can and ought to be complied with, at the commencement of the suit, but he must also show that he is able, ready and willing to do such other future acts as the contract stipulates for as a part of his specific performance.

12.  INJUNCTION—*in restraint of action of municipal authorities.* The courts will interfere, by injunction, with the acts of a municipal cor-

poration, in respect to matters which are by law placed within the power and left to the discretion of the corporation, only in a case of clear and undoubted right.

13. SAME—*to restrain the breach of a contract.* An injunction restraining the breach of a contract is a negative specific performance of such contract, and the jurisdiction to grant such injunction is substantially coincident with the jurisdiction to compel a specific performance.

14. As a general proposition, whenever the contract is one of a class which will be affirmatively specifically enforced, a court of equity will restrain its breach by injunction, if this is the only practical mode of enforcement which the terms of the contract will permit.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

The town of Lake was incorporated under a special charter, approved March 26, 1869, and by the act it was given power "to control and regulate the streets, alleys and other public places, and abate any obstructions, encroachments or nuisances thereon." The Chicago Municipal Gas Light and Fuel Company became incorporated on March 24, 1884, under the general law, and on March 25, 1884, at nine o'clock A. M., its certificate of organization was filed for record with the recorder of Cook county. The objects of the incorporation were "the manufacture and sale of gas for illuminating and heating purposes, in the city of Chicago and county of Cook, State of Illinois." The capital stock of the company was $500,000, divided into 10,000 shares of $50 each, and certificates for 9998 shares of the stock were issued to M. A. Morse, the president of the company, and certificates for one share each issued to W. H. Cook and J. J. Reed.

On March 24, 1884, the ordinance in question in this suit was presented at a meeting of the board of trustees of the town of Lake, and at a meeting of the board held on the evening of March 25, 1884, said ordinance was adopted. The first and third sections of the ordinance were as follows:

"Sec. 1.    That permission and authority be and the same is hereby granted to the 'Chicago Municipal Gas Light and Fuel Company' of Cook county, and State of Illinois, to lay their gas mains, pipes, feeders and service pipes in any and all of the streets, alleys, avenues, highways, parks and public grounds throughout said town of Lake, and to maintain and repair the same, provided that no permanent injury or damage shall be done to any street, alley, park or highway in the said town of Lake.

"Sec. 3.    Said company shall commence furnishing gas to the town of Lake within one year from the date of the passage of this ordinance, and the price of gas to consumers shall not exceed $2.50 per thousand cubic feet, with a rebate to such consumers, of fifty cents per thousand cubic feet in case of payment on or before ten days next after the expiration of the month in which the gas is used by such consumer: *Provided,* this rebate shall not apply to street lamps and public buildings, the supply therefor to be subject to special agreement."

A written acceptance of said ordinance, dated March 27, 1884, addressed to the board of trustees of the town, and signed by the president and secretary of the company, and with the seal of the company attached, was presented to said board at its meeting held March 31, 1884, and, by a unanimous vote, received, placed on file, and spread on the record.

On March 29, 1884, the company laid one hundred feet of gas pipe in State street, in the town of Lake, and was thereupon enjoined from laying any more, by an injunction writ, issued upon a bill filed by the Lake Gas Company. It appears, however, that this one hundred feet of pipe was all the pipe the company then had or had contracted for. The annual election for a board of trustees of the town was held on April 1, 1884, and on April 23, 1884, the new board of trustees passed an ordinance which purported, in terms, to repeal the ordinance of March 25, 1884. On April 25, 1884, the Lake Gas Company dismissed its bill of complaint upon which the

injunction against the Chicago Municipal Gas Light and Fuel Company had issued.

Some years prior to 1884, the Chicago, Rock Island and Pacific Railway Company had acquired a tract of land in the town of Lake, and had built upon it car shops, and also houses for the use of its employes, and, for the purpose of supplying gas for its shops and houses, had put up small oil gas works, and had used them for several years. One T. G. Springer had a patent for making coal gas, and was engaged in building gas works for a great many companies. On October 23, 1884, he entered into an agreement with the Chicago, Rock Island and Pacific Railway Company, which was as follows:

"This agreement, made this 23d day of October, in the year of our Lord 1884, by and between the Chicago, Rock Island and Pacific Railway Company, party of the first part, and Theodore G. Springer, of the city of Chicago and State of Illinois, party of the second part:

"*Witnesseth*, that the said party of the first part, in consideration of the covenants and agreements of the party of the second part, herein contained, doth hereby lease and demise unto the said party of the second part, his executors, administrators and assigns, the following described premises, to-wit: The building and premises known as the gas works of the said party of the first part, near and adjacent to the foundry and machine shops of the said party of the first part, and located on the east half of the north-east quarter of section nine (9), in township thirty-eight (38) north, range 14, east of the third principal meridian, and lying between Forty-seventh street on the north, Fifty-first street on the south, Wentworth avenue on the west, and the right of way of the said party of the first part and the Lake Shore and Michigan Southern railway on the east, in the town of Lake, in said county of Cook, and State of Illinois, to have and to hold the same for the term of two years from the day of the date hereof, together with the privilege of laying gas pipes on the grounds of said company.

"And the said party of the second part, for himself, his executors and administrators, doth hereby covenant and agree, to and with the said party of the first part, its successors and assigns, that he will immediately proceed to construct and put into the said demised premises, at his own expense, the Springer process and apparatus for the manufacture of burning gas, and will furnish to the said party of the first part all the gas necessary for or required by the said party of the first part for its use in and about its said shops, at the net cost of the same, for the period of two years, which said gas so furnished shall be of a quality and illuminating power in all respects equal to that now furnished by the city of Chicago.

"And said party of the second part doth further covenant and agree, that the cost of the gas furnished, per thousand cubic feet, shall not exceed the price or cost now paid by the said party of the first part per thousand cubic feet, the quality and illuminating power of the gas now manufactured and that to be furnished by the said party of the second part being relatively considered.

"And said party of the second part doth further covenant and agree, that he will keep, or cause to be kept, an accurate account of all expenditures in the construction of said proposed new works, or in any additions thereto, together with vouchers for the same, and also like accounts of all cost and expense for the production or manufacture of such gas as may be required by the said party of the first part.

"And it is further mutually covenanted and agreed, by and between the parties hereto, that at the expiration of this lease and agreement, if the said party of the second part shall have complied with the terms thereof, on his part, the said party of the first part, and its successors, will pay to the said party of the second part the cost and expense of constructing such new gas works, and any additions thereto, according to vouchers to be produced, and thereafter shall own and control the same.

"And said party of the second part doth further covenant and agree, that in the construction of such new gas works or apparatus under the Springer process, the gas works and apparatus now in use shall be kept and preserved intact during the whole term of this lease, so that if the said party of the second part shall fail to comply with this lease and agreement, or to furnish gas for the said party of the first part, of a quality and in quantities required by said party of the first part, that then the present works of the said party of the first part may be used as at the present time.

"And said party of the second part doth further covenant and agree, that the gas so to be manufactured and furnished by him shall not exceed in cost or price the cost or price of gas now manufactured by said party of the first part, provided the market price of materials for the manufacture of gas,—such as coal and oil,—shall not advance; but in the event of advance in the market price of such materials, then there shall be a corresponding advance in the price of gas to be furnished allowed to said party of the second part, but in no event shall the price of gas so to be manufactured and furnished to the said party of the first part exceed the net cost of the same.

"In witness whereof, the said party of the first part has caused these presents to be subscribed by its vice-president and general superintendent, and the said party of the second part has hereunto set his hand and seal the day and year first above written.

CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD,<br>
(By A. KIMBALL, V. P.)<br>
T. G. SPRINGER."

It seems there was an understanding between Springer and Morse, the president of the Chicago Municipal Gas Light and Fuel Company, that the lease was for the company; but Morse had no communications or negotiations with the railway company, and there is no evidence that company had any notice of any interest of the gas company in the lease or contract.

About the date of the agreement, Morse assigned his 9998 shares of stock to the company, and a portion of them were re-issued to Springer, and a portion re-issued to Morse, in consideration of the assignment and his past services. In consideration of the stock which was issued to Springer, he assigned to the company the patent for the use of his process in the town of Lake, agreed to furnish about $8000 worth of gas pipe, and agreed to advance the money necessary to make the improvements in the Rock Island works, with the understanding the lease was to be assigned to the gas company. Springer, after the execution of the lease, at once proceeded to construct and put on the premises the Springer process and apparatus for the manufacture of gas, and expended and paid some $5000 in so doing. The new works were completed in January or February, 1885, and their generating capacity was 150,000 cubic feet per day, which was nearly three times the quantity then daily consumed in the town of Lake. On such completion, the company commenced to furnish gas to the shops and houses of the railroad company.

The gas company made no attempt or offer to lay pipe in the streets of the town after the 29th of March, 1884, until on or about the 9th day of May, 1885. Until this latter date neither the town nor its officers had any notice or knowledge that the company either had or claimed any ownership or interest in the Rock Island works or any gas works in the town of Lake. On or about said 9th day of May, the company attempted to lay gas pipes in one of the streets of the town, and the police of the town, acting under authority of the board of trustees, forcibly prevented its servants from proceeding with said work. Thereupon, on May 14, 1885, the Chicago Municipal Gas Light and Fuel Company, appellant, exhibited its bill in equity, in the circuit court of Cook county, against the town of Lake, appellee. The object of the bill was to enjoin appellee from interfering with appellant in laying gas mains and gas pipes in the streets, alleys and public grounds of the

town, under the ordinance of March 25, 1884. Answer and replication were filed, and the cause was heard on the pleadings and proofs. A decree was entered, which dismissed the bill without prejudice to the right to sue at law, and that decree was affirmed, on appeal, by the Appellate Court for the First District. A further appeal brings the record to this court.

Mr. FRANCIS ADAMS, for the appellant:

The town of Lake had the power to pass the ordinance. 4 Private Laws of 1869, p. 328, sec. 11; *City of Quincy* v. *Bull,* 106 Ill. 349.

The acceptance of the ordinance by appellant's written communication, signed by its president and secretary, was a sufficient one, and was presumably authorized. *Smith* v. *Smith,* 62 Ill. 493; *Sawyer* v. *Cox,* 63 id. 130; *Wood* v. *Whelen,* 93 id. 153; *Insurance Co.* v. *White,* 106 id. 67.

The ordinance, and the acceptance of it and acting under it by appellant, constituted a binding contract between appellant and the town, which the town, without appellant's consent, was powerless to annul or set aside. Dillon on Mun. Corp. (3d ed.) secs. 314, 450; *City of New Orleans* v. *Wardens,* 11 La. Ann. 244; *City of Chicago* v. *Sheldon,* 9 Wall. 53; *City of Quincy* v. *Bull,* 106 Ill. 337; *City of Burlington* v. *Railway Co.* 49 Iowa, 144; *Railway Co.* v. *Village of Carthage,* 36 Ohio St. 631; *Railway Co.* v. *Springfield,* 35 Mo. 674.

Appellant, by virtue of the general Incorporation law of the State, and its recorded articles of organization, obtained a conditional grant from the State, of the right to lay gas pipes in the town of Lake, the condition being that the town would grant its consent, and upon the granting of such consent by the ordinance of March 25, 1884, the grant from the State, before conditional, became absolute, and the company's right to lay pipes in the streets became a part of its franchise, and irrevocable. *Railway Co.* v. *People,* 73 Ill. 549; *Gas Co.* v.

*Gas Co.* 115 U. S. 683; *Gas Co.* v. *Gas Co.* id. 650; *Railroad Co.* v. *Reid*, 13 Wall. 264.

A bill for an injunction is the appropriate remedy. *Chicago* v. *Turner*, 80 Ill. 419; *Frazier* v. *Miller*, 16 id. 48.

The bill in this case is not, as counsel for appellee have assumed, for the specific performance of a contract, but to enjoin appellee from interfering with or disturbing appellant in the enjoyment of its legal rights, vested in it by a valid contract.

The remedy sought is an appropriate one, and there is no adequate legal remedy. *City of Chicago* v. *Railroad Co.* 105 Ill. 73; *City of Quincy* v. *Bull*, 106 id. 337; *Railway Co.* v. *Springfield*, 85 Mo. 674; *Gas Co.* v. *Gas Co.* 115 U. S. 650; *Gas Co.* v. *Gas Co.* id. 683; *Lyon* v. *McLaughlin*, 32 Vt. 424; *Frazier* v. *Miller*, 16 Ill. 48; *Morris* v. *Thomas*, 17 id. 112; High on Injunctions, (2d ed.) 1106, 1243.

Messrs. Dexter, Herrick & Allen, for the appellee:

The ordinance was not a contract. *Railway Co.* v. *People*, 73 Ill. 542; *Railway Co.* v. *Railway Co.* 87 id. 321.

It was a mere license. *Gas Light Co.* v. *Gas Light Co.* 25 Conn. 31; *Railroad Co.* v. *Railroad Co.* 26 Am. and Eng. R. R. Cases, 116.

The complainant has not shown performance of the conditions imposed by the ordinance; but even if it be assumed that a legal contract, and performance of its conditions, had been shown, the complainant has failed to establish such a case as entitles it to the writ of injunction, which is a negative specific performance of the contract. Pomeroy's Eq. Jur. sec. 1341; *Railroad Co.* v. *Reno*, 113 Ill. 39.

The specific performance of a contract rests in the sound legal discretion of the court. *Allen* v. *Woodruff*, 96 Ill. 20; *Cohn* v. *Mitchell*, 115 id. 130.

To entitle the complainant to a specific performance of a contract, it must be shown that at the time it was entered into

it was capable of being enforced specifically by either of the parties against the other. In other words, there must be a mutuality, both as to the obligation and the remedy. Waterman on Specific Performance, secs. 196, 198; Pomeroy on Specific Performance, secs. 163, 164, note 1, p. 131; id. secs. 165, 166; *Marble Co.* v. *Ripley*, 10 Wall. 339.

As the alleged contract could not be specifically enforced by the town against the complainant, it can not be specifically enforced by the complainant against the town. *Marble Co.* v. *Ripley*, 10 Wall. 339; *Blackett* v. *Bates*, L. R. (1 Ch. App.) 117; *Johnson* v. *Railway Co.* 3 D., M. & G. 914; *Peto* v. *Railroad Co.* 1 H. & M. 468; *Ross* v. *Railroad Co.* Woolworth, 26; *Johnson* v. *Railway Co.* 22 Grant, U. C. 290; *Fallon* v. *Railroad Co.* 1 Dill. 121; *Ranger* v. *Railroad Co.* 1 Eng. Ry. and C. Cases, 50; *Kansas Co.* v. *Topeka Co.* 135 Mass. 34; *Buck* v. *Smith*, 29 Mich. 166; *Cooper* v. *Pena*, 21 Cal. 403; *Mastin* v. *Halley*, 61 Mo. 196.

Mr. JUSTICE BAKER delivered the opinion of the Court:

A franchise is a particular privilege conferred by grant from a sovereign or a government, and vested in individuals or a corporation. The franchises which were conferred by the State upon the appellant corporation, when it was organized under the general Incorporation law, are to be ascertained from the objects of the incorporation, as stated in the articles of incorporation, and these were, to manufacture and sell gas for illuminating and heating purposes in the city of Chicago and county of Cook. The corporation was also, by section 5 of the act under which it was organized, vested with and authorized to exercise all the powers necessary and requisite to carry into effect the objects for which it was formed. But these general powers intended by this section 5 are such powers only as are necessarily incident and supplemental to the special powers granted. The State did not assume, by this section,

to grant to appellant a special privilege or franchise to oc-
cupy and use the public streets of the cities and villages in
Cook county for the purpose of laying therein its mains and
gas pipes, any more than it assumed thereby to vest it with
the privilege of taking the private property of an individual
land owner for the purpose of building thereon its gas works.
The power to control and regulate the streets, alleys and other
public places within the limits of the town of Lake, and abate
any obstructions, encroachments or nuisances thereon, was
given, in its charter, to the corporate authorities of the town.
Under this power the town could lawfully permit any use of
such streets and alleys that is consistent with the public ob-
jects for which they are held, and could make a grant of a
right of way for the purpose of laying gas pipes and mains
under the surface. (*City of Quincy* v. *Bull et al.* 106 Ill. 337.)
If appellant has the right to place its mains and pipes in the
streets of the town, it is either under a license from or a con-
tract with the town. The right claimed in this case is based
upon the provisions of the ordinance of March 25,.1884. That
ordinance granted permission and authority to lay gas mains,
pipes, feeders and service pipes in any and all of the streets,
alleys, avenues, highways, parks and public grounds through-
out the town of Lake, and to maintain and repair the same.
If this was a mere license, then it was revocable at any time
before it was acted upon. (*Metropolitan City Ry. Co.* v. *Chi-
cago West Division Ry. Co.* 87 Ill. 317.) The privilege of the
use of the public streets of a city or town, when granted by
ordinance, is not always a mere license, and revocable at the
pleasure of the municipality granting it, for if the grant is for
an adequate consideration, and is accepted by the grantee, then
the ordinance ceases to be a mere license, and becomes a valid
and binding contract; and the same result is reached where,
in case of a mere license, it is, prior to its revocation, acted
upon in some substantial manner, so that to revoke it would
be inequitable and unjust.

In *Chicago City Ry. Co.* v. *The People*, 73 Ill. 541, the court had under consideration the distinction between a franchise granted by the sovereign power of the State, and an authority given by an ordinance of a city to construct a railway on a certain street, and it was said: "The grant in the ordinance is not a franchise, but a mere license,—a permission to construct a railway in a certain street, within a limited period." But notwithstanding this language, it is evident, from the opinion, that the court regarded the ordinance as a contract, —something more than a mere license, revocable at will,— for it is there said: "The common council had authority to amend, modify or annul the contract created by the ordinance of August 22, 1864, with the consent of the railway company." And it is further said: "The city was the sole judge whether the public exigency required an extension of time, or any other modification of the contract."

In *City of Quincy* v. *Bull*, 106 Ill. 337, it was said: "The ordinance of August 7, 1873, and the acceptance of it by Prince, constituted a contract between him and the city of Quincy, by which there was granted the right of way which is claimed." And further said: "This privilege of the use of the streets by Prince is not a mere license, revocable at the pleasure of the city council, but it is a grant under an express contract, for an adequate consideration received, and binding as such."

In the case at bar there were like privileges granted by ordinance, to those granted in the case last cited. Here, there was a formal written acceptance of the terms of the ordinance, and it was signed by the president and secretary of appellant, and attested with its seal, and this acceptance was, by the board of trustees of the town, ordered to be received, placed on file, and spread of record. The company, by this acceptance of the ordinance, undertook to perform a service for the public benefit of the town and its inhabitants, in furnishing them with gas for illuminating and heating pur-

poses; and it expressly contracted to commence furnishing gas to the town within one year from the date of the passage of the ordinance, and that it would furnish gas to consumers at a price not exceeding $2.50 per thousand cubic feet, with a rebate of fifty cents per thousand cubic feet, and impliedly contracted that it would, within the year, either build or otherwise procure gas works with which to supply the demand in the town for gas. We think these undertakings on the part of appellant were a sufficient consideration for the contract based on the ordinance. The contract between the town and appellant being a valid and binding contract, the repealing ordinance of April 23, 1884, adopted by the town, was ineffectual to abrogate it, and said last mentioned ordinance was consequently null and void.

The ordinance of March 25, 1884, contains this condition: "Said company shall commence furnishing gas to the town of Lake within one year from the date of the passage of this ordinance." The theory of the bill of complaint is, that there has been a performance of this condition. The bill contains these allegations: "Complainant began the work of putting in its contemplated gas plant and getting ready to commence furnishing gas to the people of said town of Lake, within the period of one year from the passage of said ordinance therein named as the time when complainant should so commence to furnish gas; and complainant says that it did, within said period of one year, have its contemplated gas plant so far completed as to commence the manufacture and supply of gas to many of the people of said town, and in so doing complainant has expended many thousand dollars; * * * and complainant further represents, that * * * it did, within the said twelve months, so far advance with its said plant as to be able to commence furnishing gas as contemplated by said ordinance of March 25, 1884, and complainant was, within said year mentioned in said ordinance, and is still, furnishing gas as therein contemplated."

It is to be noted, that waiving the question of the passage of the repealing ordinance, on two occasions, only, was appellant interfered with in attempts made by it to lay gas pipes and mains in the streets of the town.    The first of these occasions was on the 29th of March, 1884, and before it had notified the authorities of the town of its acceptance of the provisions of the ordinance of March 25, 1884, and the interference then was not by or at the instance of the town, but by the service of a writ of injunction issued upon a bill filed by a third party,—the Lake Gas Company,—and that injunction was dissolved by the dismissal of the bill of complaint within one month after its issuance.    The other occasion was on the 9th of May, 1885, when it was forcibly prevented by the town from laying gas pipes in the streets; but this was about a month and a half after the expiration of the year limited by the contract, and an interference after the expiration of the year could not, in the nature of things, have prevented the company from the performance of the condition within the year.

It is urged, however, the repeal of the ordinance was intended to be, and was, a constant menace and threat to use force, if necessary, to prevent appellant from proceeding with the work of laying pipe.    No act or expression of the town authorities, prior to the expiration of the year, which tends to show an intention to interfere with the laying of pipe, except the fact of the passage of the repealing ordinance of April 23, 1884, is in proof; and the assumption the town would have interfered to stop by force the laying of pipe, is, under the evidence, of doubtful propriety.    It would seem that if appellant regarded the repealing ordinance as of no force, and understood its contract, based upon the ordinance of March 25, 1884, was a subsisting contract, and was, in good faith, intending to carry out such contract, and desirous of performing its conditions, it would, at the very least, either have proceeded with the duties that contract imposed upon it, until forcibly prevented from so doing, or else would have notified

appellee of its claim the contract was still in force, and of its readiness to perform the conditions of the same.

But if we waive this matter, and take for granted that the passage of the repealing ordinance fully justified appellant from making any attempt to lay gas pipes in the streets within the year designated in the first ordinance, yet it is manifest the act of the town in assuming to repeal the ordinance of March 25, 1884, did not prevent the gas company from constructing or acquiring gas works, by means of which it could comply with its undertaking to supply the town with gas. In fact, the case of appellant, as made by its bill of complaint, is not, as we have seen, that it was prevented from putting up its gas works, but that it did, within the year, procure the contemplated gas plant. It is admitted by appellant, both in its bill and by its conduct, that the procurement of gas works by it within the year was contemplated by the ordinance, and we doubt not that the company had the legal right to acquire, by lease or purchase, a gas plant to subserve the purposes of its incorporation, and enable it to comply with the conditions of the grant of a right of way in the public streets. It is far from clear, however, that the assignment to appellant of the agreement and lease made between the Rock Island railway company and Springer, was a performance by appellant of its contract with appellee, and a substantial compliance with the requirement contemplated by the ordinance. It seems to us the terms of that agreement preclude the idea the assignment was such performance and compliance. By that agreement the railway company demised and leased the building and premises, known as its gas works, to Springer for the term of two years, and Springer, who was engaged in the business of constructing gas works, agreed to put into the premises the Springer process and apparatus for the manufacture of gas, and furnish the company, during the two years, all the gas required for use in its shops and houses at net cost, with certain stated guaranties as to the quality and cost of such gas,

and at the end of the two years, if the quality and cost of the gas furnished complied with the requirements of the contract, the railway company agreed to pay the cost and expense of constructing the new gas works, and any additions thereto; and the agreement provided that the railway company "thereafter shall own and control the same." There was also a provision in the agreement the gas works and apparatus already in use should remain intact, so that if Springer failed to comply with his agreement, and furnish gas of the quality, etc., required, then the old works could again be used. Manifestly, the furnishing of gas to the town of Lake and its inhabitants for public consumption was not within the purview of this agreement. The intention of the railway company evidently was to test the Springer process and apparatus for a term of two years, and at the end of that time, if the guaranties were made good, and the test proved satisfactory, to pay for and own the new works and process furnished by Springer. The new works were undoubtedly wanted by the railway company solely for the purpose of lighting its own shops and buildings situate on its own grounds. It is not to be presumed it had any intention of engaging, either directly or indirectly, in the business of manufacturing and selling gas for public consumption, as that business would be wholly foreign to the purposes of its organization, and *ultra vires*. The objects of Springer in making the agreement and taking the lease, at least so far as they appear in the instrument which was executed, were to introduce his new process and apparatus for the manufacture of gas, and at the end of two years effect a sale of the same and of the new gas works. The lease and contract had reference only to the railroad buildings and ground, and the lease, upon its face, was of a temporary and provisional character, and plainly made merely for the purpose of affording opportunity to test the Springer process and works.

It can not reasonably be claimed that a lease upon gas works for the short term and of the provisional character of

that here in question, is such a procurement of gas works as was contemplated by the ordinance of March 25, 1884. At the time fixed by the ordinance for appellant to commence furnishing gas to the town, the lease had only about a year and a half to run, with the right vested in the railway company to pay for and own the works at the end of that time, or else, in the event they did not prove satisfactory, to compel their removal from its grounds. At the time the cause was heard and determined in the circuit court, the term demised by the lease had long since expired, and the extension of the lease, which had been given during the pendency of the suit, had much less than a month to run.

The bill of complaint in this case, though not strictly a bill for the specific performance of a contract, is, in substance, a bill of that kind. In Pomeroy's Equity Jurisprudence, (sec. 1341,) it is said: "An injunction restraining the breach of a contract is a negative specific enforcement of that contract. The jurisdiction of equity to grant such injunction is substantially coincident with its jurisdiction to compel a specific performance. Both are governed by the same doctrine and rules. It may be stated as a general proposition, that whenever the contract is one of a class which will be affirmatively specifically enforced, a court of equity will restrain its breach by injunction, if this is the only practical mode of enforcement which its terms permit." The exercise of the jurisdiction to enforce the specific performance of a contract rests in the sound legal discretion of the chancery court, in view of the terms of the contract and all the surrounding circumstances. *McCabe* v. *Crosier*, 69 Ill. 501; *Bowman* v. *Cunningham*, 78 id. 48; *Chicago, Burlington and Quincy Railroad Co.* v. *Reno*, 113 id. 39.

One of the principles which govern, where a bill for specific performance is brought, is, that the complainant must show that the contract has been fully and fairly, and in good faith, performed. In Story's Equity Jurisprudence, (sec. 736,) it is

said, that "in cases of covenants and other contracts, where a specific performance is sought, it is often material to consider how far the reciprocal obligations of the party, seeking the relief, have been fairly and fully performed. For if the latter have been disregarded, or they are incapable of being substantially performed on the part of the party so seeking relief, * * * courts of equity will not interfere." In Pomeroy on Specific Performance, (sec. 330,) it is said: "The party seeking aid in the court as actor,—generally the plaintiff,—must not only show that he has complied with the terms, so far as they can and ought to be complied with, at the commencement of the suit; he must also show that he is able, ready and willing to do those other future acts which the contract stipulates for as a part of its specific performance."

It was not the spirit and true intent of the ordinance of March 25, 1884, that the gas company should get the assignment of a short and merely provisional lease of gas works, and thereby fulfill the bare letter of its contract, by *commencing*, within the year, to deliver gas to the town of Lake, without making any provision for the continuance of such service. It would be inequitable and unjust, upon so uncertain a tenure of its future gas service, to compel the town, against its will, to permit appellant to dig up and obstruct its public streets and highways, and occupy and use them for the purpose of laying and maintaining therein its gas mains and gas pipes. It is settled doctrine that the courts will interfere, by injunction, with the acts of a municipal corporation, in respect to matters which are, by the law, placed within the power and left to the discretion of the corporation, only in a case of clear and undoubted right, and such a case, in our opinion, is not shown in the record now before us.

We are unable to say that the decree of the circuit court refusing the injunction and dismissing the bill was erroneous. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*