CLARENCE ULREY *et al.* Appellees, *vs.* A. P. KEITH *et al.* Appellants.

*Opinion filed December 15, 1908.*

1. INJUNCTION—*a suit to enjoin breach of contract is governed by rules of specific performance.* A suit to enjoin a breach of contract is governed by the same rules as a suit for specific performance, and the remedy by injunction will be denied if the contract is so wanting in mutuality that defendant, being free from personal bar, could not specifically enforce the contract against complainant.

2. SAME—*when breach of oil and gas lease will not be enjoined.* A provision in an oil lease giving the lessee the option of surrendering the lease at any time upon payment of one dollar precludes specific enforcement of the lease by the lessor, and, because of the want of mutuality of remedy, a court of equity will not enjoin a breach of the lease at the suit of the lessee. (*Watford Oil and Gas Co.* v. *Shipman,* 233 Ill. 9, followed.)

3. SAME—*fact that a lease is valid does not carry with it the right to enjoin a breach.* The fact that the presence, in an oil and

gas lease, of a clause giving the lessee an option of surrender at any time does not render the lease invalid or entitle the lessor to compel its surrender does not establish the lessee's right to enjoin a breach of the lease. (*Poe* v. *Ulrey,* 233 Ill. 56, distinguished.)

APPEAL from the Circuit Court of Clark county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

Appellees, Clarence Ulrey and the Illinois Oil and Gas Company, a corporation organized under the laws of the State of West Virginia and licensed to do business in Illinois, filed their bill in the circuit court of Clark county, alleging that on the 25th day of January, 1905, A. P. Keith, being the owner in fee of the south half of the south-east quarter of the north-east quarter, the south-west quarter of the south-east quarter and the north-west quarter of the south-east quarter of section 31, township 10, north, range 13, west, in Clark county, Illinois, and Dill Keith, being the owner in fee of the east half of the north-west quarter of the south-west quarter of section 32, in said township 10, Clark county, Illinois, executed to Clarence Ulrey a writing commonly called an oil and gas lease, which lease is identical in form and substance, except as to the names of the lessors and the property therein described, with the lease set out in full in *Poe* v. *Ulrey,* 233 Ill. 56; that on the 17th day of May, 1905, for a valuable consideration, Ulrey assigned and transferred to the Illinois Oil and Gas Company an undivided fifteen-sixteenths of said lease. The bill further alleges that in April, 1905, the appellees, with the knowledge and consent of appellants, commenced drilling for oil and gas on the said premises and completed a large producing gas well on or before the first day of May, 1905; that a packer and tubing necessary for a marketable gas well were placed in said well and the well closed in, and that appellees continued drilling wells in the district mentioned in and required by the lease but found no other paying well. The bill alleged that appellees had complied with and fulfilled the terms of the lease on their part and were

ready and willing to continue to keep and perform their
agreement in said lease, but that appellants refused to per-
mit them to do so; that appellees were ready, willing and
had offered to drill other wells on the premises belonging
to appellants, but appellants had refused to allow them to
enter upon said premises for that purpose, and have noti-
fied appellees that if they entered upon said premises they
would have to do so with force. The bill further alleges
that while the well drilled upon appellants' premises is a
large, paying gas well, appellees had no market for the gas,
but had tendered appellants the rental provided in the lease
for said well but the tender was refused by appellants, and
that appellants had refused to accept gas from said well for
two dwelling houses, as provided in the lease, although ap-
pellees had repeatedly offered to furnish it if the appellants
would make their own connections, as required by the lease.
The bill alleged that the appellants had entered into some
agreement with one Everett Keith, the terms of which were
unknown to appellees, by which said Everett Keith was to
drill on said premises for oil and gas; that he had entered
upon said premises with a rig and drilling outfit and was
proceeding to drill a well for the production of oil and gas,
and declared his purpose and intention, if he found oil and
gas in paying quantities, to convert the same to his own
use, and that this would be an irreparable damage to ap-
pellees. The bill prayed that A. P. Keith, Dill Keith and
Everett Keith, who were made defendants, be required to
answer, not under oath, and that they, their agents, attor-
neys, employees and servants, be enjoined from drilling any
well or wells, and from erecting any derricks, rigs or other
structures, laying pipe lines, using water, or doing any
other act tending toward the development of oil or gas on
the premises described in the lease. A temporary writ of
injunction was ordered by the master in chancery.

The appellants answered the bill, denying that they exe-
cuted the lease in substance containing the terms and condi-

tions set out in the bill, but admitting they did execute a lease to Clarence Ulrey on the 25th day of January, 1905, and set out a copy of the lease. The answer averred that Ulrey paid no consideration for the execution of said lease when it was executed, and did not afterwards at any time pay the one dollar therein mentioned to appellants. The answer denies that the Illinois Oil and Gas Company is a corporation organized under the laws of West Virginia and licensed to do business in the State of Illinois; denies that in pursuance of the lease appellees, in April, 1905, entered upon the lands described in said lease and drilled and completed a well on or before the first day of May, 1905, which was a large producing gas well. The answer admits that appellees or someone else, in April or May, 1905, pretended to drill a well on said premises, and avers that the well that was so pretended to be completed was tubed and packed and securely closed in and no gas was ever produced from it. The answer further denies that the appellees have complied with or fulfilled the terms of the lease on their part or that they are ready and able to do so; denies they have repeatedly applied to appellants for permission to enter said premises to drill wells and carry out the terms of the lease, but avers no permission was asked of appellees to do so after the well drilled in April and May, 1905, was packed; denies appellees had no market for gas if it could have been produced; denies appellees offered to appellants, or that appellants refused, gas for dwelling houses, as provided for in the lease, and avers that appellants repeatedly demanded gas and that appellees informed them that they would not furnish it. The answer further avers that appellees abandoned said gas well and leasehold premises as worthless and refused to operate said well for oil and gas, and never, before bringing this suit, attempted to develop appellant's lands either for oil or gas, but abandoned said premises and relinquished all right, title and interest they ever had in said real estate by virtue of the said lease. The answer further

avers that the consideration for the lease was the speedy development of the premises for oil and gas, but that appellees failed to use due diligence in such development, whereby the consideration for the lease failed and the lease became void. The answer avers that there is a surrender clause in the lease, whereby the lessees and their assigns had the right, upon the payment of one dollar, at any time to surrender the said lease and relieve themselves from any further liability by reason thereof; that said lease is therefore unilateral and inequitable, and that it cannot be enforced in a court of equity. It is further averred that appellants A. P. Keith and Dill Keith, who are husband and wife, occupied the premises as a homestead, and that there was no release or waiver of their homestead estate in their lease and that the same had never been in any manner set off to them.

Upon a hearing the court entered a decree sustaining the lease as to all the lands except the twenty acres in section 31, which was found to be occupied by the Keiths as a homestead. Among other things the court found the lease was one of a block of leases taken by appellee Clarence Ulrey in the same neighborhood from the respective owners of various tracts of land, among whom were J. V. and Mary E. Poe; that appellees had complied with the terms of their lease by drilling and completing a paying gas well on appellants' land within the time required; that they had been diligent in developing said block of leases by drilling a well upon the land leased by John McNurland, and had offered to drill wells on the farms of others of the lessors of the said block but were refused permission; that they had thereupon tendered the rentals of all of said leases to the lessors and had kept the tender good; that they had offered to furnish gas to appellants as provided in the lease, but appellants refused to accept it; that appellees had kept and performed all of the covenants of the lease on their part, and that in the fall of 1905 appellants ratified and

confirmed said lease in them. The decree further found that appellants had with force and arms prevented appellees from further entering upon the land to drill wells, and that Everett Keith had been permitted to enter thereon for that purpose, with the intention of taking all the oil and gas from under said land; that appellees had the right to enter upon and develop said lands, except the homestead, under the terms and conditions of the lease, and enjoined appellants from entering upon said lands for the purpose of operating or producing oil and gas so long as the appellees complied with the terms of their said lease; also enjoined appellants from in any manner interfering with or preventing appellees from entering upon and developing said lands for oil and gas. From that decree defendants to the bill have prosecuted this appeal to this court.

ABRAM SIMMONS, and HOLLENBECK & CONNELLY, for appellants.

GOLDEN, SCHOLFIELD & SCHOLFIELD, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

The principal grounds urged by appellants for a reversal of the decree, and discussed in the briefs of both parties, are: (1) That the oil and gas company was a West Virginia corporation, that the assignments of fifteen-sixteenths of the lease were made to it April 30 and May 17, 1905, and that said corporation did not secure a license to do business in Illinois until July 2, 1905; (2) that drilling the so-called gas well on appellants' premises was not a compliance with the terms of the lease, for the reason that the well was not a paying well, as shown by the evidence; (3) that the real consideration for the lease was not the quarterly rentals provided therein, but was the speedy development of the premises for oil and gas, and that appellees did not comply with the requirement of the lease in that respect but

237—19

utterly failed, and, in fact, abandoned the premises; (4) that an injunction restraining the breach of a contract is a negative enforcement of it, and that as the lease contained a clause by which appellees were authorized to surrender it at any time, specific performance would not have been decreed in favor of appellants, and therefore the negative enforcement of it will not be decreed in favor of appellees. In the view we take of the case it will not be necessary to discuss any but the last of these propositions, for in our opinion, conceding the decree otherwise to be supported by the law and the facts, this question is decisive of this case.

The suit to enjoin the violation of a contract is governed by the same rules as a suit to enforce specific performance. The decisions of the various courts of this country have not all been harmonious in applying the same rules to a suit to enjoin a breach of a contract that are applied to suits to enforce specific performance, but this court is committed to the application of the same rules in both cases. In Pomeroy's Equity Jurisprudence (vol. 6, sec. 769,) the author lays down the true rule applicable to suits to enforce specific performance to be: "If, at the time of the filing of the bill in equity, the contract being yet executory on both sides, the defendant, himself free from fraud or other personal bar, could not have the remedy of specific performance against the plaintiff, then the contract is so lacking in mutuality that equity will not compel the defendant to perform but will leave the plaintiff to his remedy at law. This rule, it is believed, covers the circumstances in equity where, according to the weight of authority, the court refuses its aid for lack of mutuality." This is the rule uniformly followed by this court in specific performance cases. A distinction has been made by some courts in the application of the rule in suits to enjoin the breach of contracts. The most numerous class of those cases have been suits to enjoin the breach of a contract for personal services, such as a singer or an actor. In the earlier English cases it was held that

as specific performance could not be enforced, courts would not interfere by injunction to prevent a breach of the contract; but in later cases, following *Lumley* v. *Wagner*, 1 DeG., M. & G. 604, English courts have held that while specific performance could not be decreed in such cases, courts would restrain the parties, by injunction, from rendering services elsewhere during the existence of the contract. Both lines of decisions have their adherents in the courts of this country.

The lease in this case contained the following clause: "It is agreed that upon the payment of one dollar, at any time, by the parties of the second part, their successors or assigns, to the parties of the first part, their successors or assigns, said parties of the second part, their successors or assigns, shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine and this lease becomes absolutely null and void." It is clear that on account of such provision a court of equity could not enforce specific performance of the lease at the instance of the lessor, and if the law as declared in this State is that where there is a lack of mutuality in remedy courts of equity will aid neither of the parties in the enforcement of the contract but will leave them to their remedy at law, then the decree in this case is erroneous.

*Bauer* v. *Lumaghi Coal Co.* 209 Ill. 316, was a suit for specific performance of an agreement to convey a right of way for a switch track when demanded in writing and upon the payment of $300. The court held specific performance could not be decreed, and said (p. 319): "The contract is also lacking in mutuality. It is said in Beach on Modern Law of Contracts, (vol. 2, sec. 885): 'As a general rule, specific performance will not be decreed in any case where mutuality of obligation and remedy does not exist.' And in a note to this text it is said: 'The general principle is, that where the contract is incapable of being enforced

against one party, that party is equally incapable of enforcing it against the other.' In *Baird* v. *Linthicum*, 1 Md. Ch. 345, Chancellor Johnson held 'that if one of the parties is not bound or is not able to perform his part of the contract he cannot call upon the court to compel specific performance by the opposite party.' And in the subsequent case of *Duvall* v. *Myers*, 2 Md. Ch. 401, the same judge said, in substance, 'that the right to the specific execution of a contract depends upon whether the agreement is obligatory upon both parties, so that upon the application of either against the other the court can compel a specific performance.' We quoted the above authorities with approval in the case of *Tryce* v. *Dittus*, 199 Ill. 189; also, see 22 Am. & Eng. Ency. of Law, (1st ed.) p. 1019. One cannot read the contract in this case without being impressed with the fact that it was so worded that if, in the future, the coal business should prove profitable and Rupprecht or his assigns could gain an advantage by taking an easement, then they would have a right to demand it and could compel Bauer to convey, but if the coal business did not open up favorably and it would be no advantage to Rupprecht, then Bauer would have no right to compel a specific performance and would be powerless to force Rupprecht to do anything. It was therefore lacking in that element of mutuality required under the decisions above quoted, and therefore could not be specifically enforced in a court of equity."

In *Lancaster* v. *Roberts*, 144 Ill. 213, (which was a specific performance case,) the court quoted with approval from Fry on Specific Performance: "Whenever * * * the contract is incapable of being enforced against one party that party is equally incapable of enforcing it against the other, though its execution in the latter way might, in itself, be free from the difficulty attending its execution in the former."

In *Winter* v. *Trainor*, 151 Ill. 191, (a specific performance case,) the court said (p. 195): "Unless a contract can

be specifically enforced as to all parties, equity will not interfere."

*Marble Co.* v. *Ripley,* 10 Wall. 339, was a suit for specific performance of a contract to furnish the complainant quantities of marble at his mill for such time as he might desire. The contract contained a provision that he might abandon it at any time on giving one year's notice. The court said (p. 359): "Another reason why specific performance should not be decreed in this case is found in the want of mutuality. Such performance by Ripley could not be decreed or enforced at the suit of the marble company, for the contract expressly stipulates that he may relinquish the business and abandon the contract at any time on giving one year's notice. And it is a general principle that when, from personal incapacity, the nature of the contract, or any other cause, a contract is incapable of being enforced against one party, that party is equally incapable of enforcing it specifically against the other, though its execution in the latter way might, in itself, be free from the difficulty attending its execution in the former." This is considered a leading case on the subject of specific performance and is much cited by courts and text writers.

In *Karrick* v. *Hannaman,* 168 U. S. 328, the court said (p. 336): "Especially where, by the partnership agreement, as in the case at bar, the defendant is to supply all or most of the capital and the plaintiff is to furnish his personal services, the agreement cannot be specifically enforced against the plaintiff and will not be enforced against the defendant." The same court, in treating the same subject in *Express Co.* v. *Railroad Co.* 99 U. S. 191, said (p. 200): "But we need not pursue the subject further, because there is one provision of the contract in this case which is fatal to the relief sought. A court of equity never interferes where the power of revocation exists. (Fry on Specific Performance, 64.) The contract stipulated that after the first year it shall cease upon the payment of $20,000 and

interest. This might be made immediately upon the rendition of the decree. The action of. the court would thus become a nullity."

*Rust* v. *Conrad,* 47 Mich. 499, (41 Am. Rep. 720,) was a suit to enforce the specific performance of a contract to make a mining lease. By the terms of the lease to be given under the contract the lessee might terminate it at any time on giving thirty days' notice. The opinion by Cooley, J., holds that as the continuance of the lease, if given, would depend upon the will of the lessees, who might immediately elect to terminate it, the contract could not be enforced. In the opinion it is said (p. 722): "But the court will also refuse to interfere in any case where, if it were to do so, one of the parties might nullify its action through the exercise of a discretion which the contract or the law invests him with. The refusal, in such case, does not depend, of necessity, upon any illegality, inequality or unfairness, but it is sufficiently based upon the impropriety of imposing on the judge the labor and on the public the expense of an investigation of disputes when the circumstances are such as to preclude any judgment that may be rendered from being final. No court can with reason be called upon to do a vain thing." The same rules are announced in *Benedict* v. *Lynch,* 1 Johns. Ch. 370; 7 Am. Dec. 484; *Smith* v. *Smith,* 36 Ga. 184; 91 Am. Dec. 761; *Buck* v. *Smith,* 29 Mich. 166; 18 Am. Rep. 84; *Hissam* v. *Parrish,* 41 West Va. 686; 56 Am. St. Rep. 892. Many other cases might be cited to the same effect, but we have referred to enough decisions of this and other courts to show what the rule is with reference to mutuality of remedy in the enforcement of specific performance of contracts.

We will now examine the authorities in cases where it was sought to enjoin the breach of the contract.

*Chicago Municipal Gas Light Co.* v. *Town of Lake,* 130 Ill. 42, was a bill to enjoin the town of Lake from interfering with the gas company laying pipes in the street un-

der permission of an ordinance which was repealed after it had been accepted by the gas company. It is unnecessary to cite authorities to prove that such an ordinance, when accepted, becomes a contract. The court said (p. 60): "The bill of complaint in this case, though not strictly a bill for the specific performance of a contract, is, in substance, a bill of that kind. In Pomeroy's Equity Jurisprudence (sec. 1341) it is said: 'An injunction restraining the breach of a contract is a negative specific enforcement of that contract. The jurisdiction of equity to grant such injunction is substantially coincident with its jurisdiction to compel a specific performance. Both are governed by the same doctrine and rules. It may be stated as a general proposition, that whenever the contract is one of a class which will be affirmatively specifically enforced a court of equity will restrain its breach by injunction, if this is the only practical mode of enforcement which its terms permit.' The exercise of the jurisdiction to enforce the specific performance of a contract rests in the sound legal discretion of the chancery court, in view of the terms of the contract and all the surrounding circumstances."

*East St. Louis Railway Co.* v. *City of East St. Louis,* 182 Ill. 433, was a suit by the railway company against the city of East St. Louis to enjoin the city, its officers, agents and employees, from preventing or interfering with the railway company laying its tracks in the street. The railway company claimed the right to such use of the streets under an ordinance. The court held that the suit was in the nature of a suit for specific performance, and approved and followed *Chicago Municipal Gas Light Co.* v. *Town of Lake, supra.*

*Welty* v. *Jacobs,* 171 Ill. 624, was a suit by the manager of a theatrical troupe to enjoin the manager of the theater from violating his contract with the manager of the troupe to furnish a theater for performances for a certain period of time. The bill alleged that the damages to the com-

plainant could not be actually or approximately determined and that the defendant was financially irresponsible. The court said (pp. 629, 630) : "Strictly speaking, the bill was not one for specific performance, but for injunction, only. It is clear from its allegations and from the authorities bearing upon the question, that specific performance of the contract could not be decreed. It is not, and cannot be, contended that appellant could have been compelled, by any writ the court could have issued, to occupy the theater with his company of actors and give the performances contracted for, any more than a public singer or speaker can be compelled specifically to perform his contract to sing or speak. Negative covenants not to sing or perform elsewhere at a certain time than a designated place have been enforced by the injunctive process, but further than this such contracts have not been specifically enforced by the courts, by injunction or otherwise. (*Lumley* v. *Wagner,* 1 DeG., M. & G. 604; *Daly* v. *Smith,* 38 N. Y. Sup. 158.) In *Lumley* v. *Wagner* there was an express covenant not to sing elsewhere than at the complainant's theater, and the injunction was placed on that ground. * * * Before a contract will be specifically enforced there must be mutuality in the contract, so that it may be enforced by either, and as this contract was of such a nature that it could not have been specifically enforced by appellee Jacobs, it should not be so enforced by appellant."

*Cleveland* v. *Martin,* 218 Ill. 73, was a bill to enjoin the defendant from doing certain acts alleged to be in violation of his contract with complainant. The court again quoted from Pomeroy the same section quoted in *Chicago Municipal Gas Light Co.* v. *Town of Lake, supra,* and, applying the same rules, denied the relief prayed.

The most recent case in this court upon this subject is *Watford Oil and Gas Co.* v. *Shipman,* 233 Ill. 9. In that case Nancy E. Shipman, owner of the undivided one-tenth of certain real estate, executed an oil lease for the whole

of the premises. The lease appears to have been in the same form as the one here involved and contained the same surrender clause. By successive assignments the leasehold passed to the Watford Oil and Gas Company. The bill averred that while it was in full force and effect Nancy E. Shipman and her co-tenants made a similar lease to another party and were attempting to defeat and destroy the rights of the Watford Oil and Gas Company, and prayed an injunction and for a division and partition of the premises between Nancy E. Shipman and her co-tenants, and that the Watford Oil and Gas Company be decreed to have the right to go upon the portion of the premises set off to Nancy E. Shipman and develop the same for oil and gas. This court denied the relief prayed, upon two grounds: First, that the lease gave the lessee no interest in the premises that entitled it to a partition; and second, because of the surrender clause of the lease. Upon this subject the court said (p. 13): "Aside from the imperfection in the title of appellant above pointed out, there is another reason why a court of equity will refuse appellant the relief sought. The lease in question contains the following clause: 'It is expressly agreed that upon the payment of one dollar by the parties of the second part, their successors or assigns, to the party of the first part, their heirs or assigns, they shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine and this lease absolutely become null and void.' Under this clause appellant may surrender the lease for cancellation at any time and thereby relieve itself from all future liability under it. The option of appellant to terminate the lease at any time upon payment of one dollar deprives appellant of the right to specific performance, directly or indirectly, until it has performed the contract or placed itself in such position that it may be compelled to perform the contract on its part. If the relief here sought should be granted,

appellant, under the cancellation clause of the lease, may nullify the decree by exercising its option not to proceed further. A court of equity will not do a vain and useless thing by rendering a decree settling the rights of parties which one of them may set aside at his will," (citing cases.)

Appellees contend that the court having denied the relief sought in that case upon the ground that the lease gave the lessees no interest that entitled them to ask for partition, the surrender clause was a mere incident and not essential or necessarily involved in the case. They further contend that the surrender clause of the lease was directly involved in *Poe* v. *Ulrey,* 233 Ill. 56, and that the decision in that case sustains appellees' right to the injunction notwithstanding the surrender clause in the lease. We do not so understand this decision. The whole lease was before the court in the Watford Oil and Gas Company case and the determination of the rights of the parties thereunder involved all that was passed upon by the court in the opinion delivered, and while that case decided the very question here involved, it applied rules and principles of law announced and sustained in many previous decisions of the court. In *Poe* v. *Ulrey, supra,* the suit was instituted by the lessor to set aside the lease. One of the grounds upon which it was claimed the lease was invalid was, that there was a want of mutuality between the parties because the lease contained a surrender clause by which appellee might terminate it upon the payment of one dollar. We held the surrender clause did not invalidate the lease; that while the lessee had the option to surrender it, the lessor could not compel a surrender. The question of the lessee's right to enjoin a breach of the contract by the lessor was not involved in that case. We adhere to the law as laid down in *Poe* v. *Ulrey, supra,* but it does not follow that to hold the lease a valid contract necessarily implies or carries with it the right to enjoin the lessors from violating it. As to very many valid contracts equity will not interfere to enforce their performance or to

prevent their violation. It should be borne in mind, also, that there is a distinction, in equity, between a mutuality in the obligation of contracts and a mutuality of remedy under them. As stated by Cooley, J., in *Rust* v. *Conrad,. supra:* "Denying specific performance does not deny the legality or obligation of the contract; it denies merely that the case is one of equitable cognizance." We might cite many other cases from courts of last resort supporting the views of this court upon the question here involved. There are also cases holding a different view. But however that may be, the question is so thoroughly settled, and by such a uniform line of decisions in this State, that we would not feel at liberty to adopt a contrary view if we felt disposed so to do. In *Watford Oil and Gas Co.* v. *Shipman, supra,* it was pointed out that cases of the character there involved were distinguishable from the cases holding that option contracts for the sale of real estate may be enforced by the party holding the option, who, within the time specified, elects to make the purchase and pays or tenders the purchase price.

Counsel have also in their brief contended that because of the character of the question here, involving, it is said, a new line in the development of the resources of our State, and because of what is claimed to be the more modern tendency of the courts to adopt an opposite view, we should depart from the rules announced in the previous decisions of this court. We do not regard the circumstances and conditions surrounding and entering into this case as sufficient to justify us in departing from a rule of law so firmly settled and so long adhered to in this State.

The decree of the circuit court is reversed and the cause remanded to that court, with directions to dismiss the bill.

*Reversed and remanded, with directions.*