# John H. Lee et al., Appellants, v. Chicago League Ball Club, Appellee.

## Gen. No. 16,557.

1. INJUNCTIONS—*what not enforceable negative covenant.* A negative covenant which adds nothing to a previous affirmative covenant will not be enforced in equity. To entitle one to an injunction upon the ground that it is to enforce merely a negative covenant, the covenant must be one standing out by itself, a special stipulation separated from the rest of the contract, and the enforcement of which would not involve the specific performance of the entire contract.

2. SPECIFIC PERFORMANCE—*what essential to enforcement of contract.* Whatever may be the law elsewhere, it is the law in Illinois that before a contract will be specifically enforced, there must be mutuality in the contract so that it may be enforced by either.

Bill in equity. Appeal from the Circuit Court of Cook county; the

Hon. Julian W. Mack, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed April 19, 1912. *Certiorari* denied by Supreme Court (making opinion final).

George A. Chritton, for appellants; Thomas E. D. Bradley, of counsel.

Wilkerson & Cassels, for appellee; Edwin H. Cassels, of counsel.

Mr. Presiding Justice Baldwin delivered the opinion of the court.

This appeal brings before us for review a final decree of the Circuit Court of Cook county, dismissing appellants' bill for want of equitable jurisdiction.

The bill alleges that on the 12th of March, 1906, appellee, being then in possession of certain baseball premises in Chicago, under a long term lease, entered into a written contract with one Barrett, granting to him and his assigns the right to place in certain seating space in said premises, certain cushion seats to be equipped with coin or slug operated control boxes,—the income from which was to be divided in a fixed proportion between the parties. Barrett was to install 3600 the first year, and thereafter as fast as conditions warranted,—was to fix the price of the use of the cushions and was to have free access at all times for the purpose of installing, maintaining and selling said seats and collecting from the coin boxes, etc. Appellee agreed to co-operate in promoting the use of the seats by the public. The agreement was in terms to continue in force for a period of ten years and contained a clause stating "that said seats shall be kept in use and not replaced, removed or in any wise obstructed" by appellee during the period of the agreement. Barrett's interest in the contract subsequently became vested in appellants.

The bill then avers the installation by appellants of about 3000 seats during the first year of the contract at an expense of about $10,000; that the seats were used during the seasons of 1906 and 1907 without any complaint as to being satisfactory, and, in fact, were during that period highly commended by the president of appellee; that on Saturday and Sunday, January 4th and 5th, 1908, without consent of appellants and without giving them any notice, appellee removed a large part of the seats and threatened the removal of the others, making then for the first time the claim that the seats were not satisfactory, and that under the contract it had the right to remove them and terminate the contract.

The bill alleges that the receipts from the sale of the seats varied greatly, and that it is impossible to accurately ascertain the damages appellants would suffer from the removal of the seats, and that they have no adequate remedy at law. The bill prayed for an accounting and an injunction against the removal of any more seats.

Upon the issues being made up, the cause was referred to a master, who took proofs, and who found and reported that appellee's conduct was unjustifiable, and that the real reason for its action was to make more money for itself by a new arrangement of the seating system, in which appellants were not to share, and that in removing the seats, appellee committed an unjustifiable breach of the contract. The master, however, reported as conclusions of law:

"(A)   Under the decisions of the Supreme Court of Illinois the complainants should be remitted to their remedy at law.

(B)   Complainants' damages, while difficult of ascertainment, are not sufficiently so to warrant the interposition of a court of equity.

(C)   A court of equity cannot grant the complainants the injunctive relief, or any part of it, prayed for,

for the following reasons: Said contract relates only to personal property, and requires the continuous rendition by complainants of personal services for a period of years, and there is, under the terms of said contract, no mutuality of remedy.

I, therefore, recommend that the temporary injunction heretofore issued herein be dissolved, and that the bill of complaint herein be dismissed at complainant's cost.''

After hearing the parties upon these conclusions of law only, the court sustained the conclusions and entered a decree in conformity therewith.

There is no substantial controversy between the parties as to the facts. It is not contested that the contract was made between the club and Barrett, and that his rights and obligations thereunder were duly assigned to and assumed by appellants; that pursuant to the terms of the contract, about 3000 of the seats were duly installed and were operated by appellants for two years without complaint on the part of appellee; and that, at the expiration of two years of the life of the contract, which in terms provided that it should be in force for ten years, appellee removed a large part of the seats and threatened the removal of the remainder in apparent disregard of the rights of appellants under the contract; but appellee insists that no relief can be granted in equity, and that appellants must seek their remedy in a court of law. And this is practically the only question before us.

A proper decision of this question necessitates a careful examination of the rights and duties of the respective parties under the contract. It provides that Barrett shall install 3600 seats, using every endeavor to do so as soon as possible, and thereafter to continue to install such seats as fast as conditions may warrant, equipped with coin-operated or slug-operated control boxes,—he to have a percentage of the proceeds from the use of the cushion seats, which vary with the con-

ditions named,—Barrett to have the right to enter upon the premises at all times to install, maintain and inspect the seats, and for the purpose of selling said seats and making collections from the coin boxes, or doing any other work or duty in connection with said seats,— Barrett to fix the price for the use of the cushions and to make reports to the club of the sums collected. Both parties agreed to co-operate to promote the use of the seats by the public. The contract further provides that "it is further understood that said seats shall be kept in use and not replaced, removed, or in any wise obstructed by the second party, or its agents, during the period of this arrangement, * * * which shall remain in force for a period of ten years." In the event of the bankruptcy of the club during the period, Barrett shall have and be entitled to the full ownership and control of the seats, with privilege of removal from premises; —both parties are to share equally in net proceeds from any advertisements on the backs of cushions or seats furnished by Barrett in the future.

Appellants do not claim that equity would have jurisdiction to enforce this part of the agreement, except that it constitutes a "negative covenant," which, it is said, courts of equity often enforce by injunction. But does the clause constitute a "negative covenant" in the sense in which that expression is used as a basis of equitable relief? It reads as follows: "It is further understood that said seats shall be kept in use and not replaced, removed or in any wise obstructed by the second party or its agents during the period of this agreement."

We think the words "and not replaced, removed," etc., are but a negative form of expressing the preceding positive averment in the same sentence, "that said seats shall be kept in use," and that, in legal contemplation, they add nothing to the affirmative covenant,— "that said seats shall be kept in use." To entitle one to an injunction upon the ground that it is to enforce

merely a "negative covenant," the covenant must be one standing out by itself,—a special stipulation, separated from the rest of the contract, and the enforcement of which would not involve the specific performance of the entire contract.

In this case to enforce the so-called "negative covenant," is to enforce the affirmative statement of it, and, as that is all the relief which would be given by a decree for specific performance of the contract, it cannot be done. The court clearly could not decree specific performance of the covenants of appellant "to continue to install seats as fast as possible, and as fast as conditions may warrant;" to "sell the seats;" to "fix the price;" to make "collections from the coin boxes;" continuously operate and maintain the seats for the remainder of the ten year period of the contract.

Contracts which relate to personal property only, and those requiring continuing personal services extending through a series of years, will not be specifically enforced. Harley v. Sanitary District of Chicago, 54 Ill. App. 337; Grape Creek Coal Co. v. Spellman, 39 Ill. App. 630.

Whatever may be the law elsewhere, it is the law in Illinois that before a contract will be specifically enforced, there must be mutuality in the contract so that it may be enforced by either, and as this contract could not have been specifically enforced by appellee, the Chicago League Ball Club, it cannot be so enforced by appellants. Ulrey v. Keith, 237 Ill. 284; Welty v. Jacobs, 171 Ill. 624, 630.

Moreover, if an injunction were to be issued in this case, it would necessarily be upon condition that appellants continue to perform their contract, and it would be enforcing a contract concerning only personal property and personal property rights. This is not the proper function of a court of equity.

The decree of the lower court must be affirmed.

*Decree affirmed.*