HARRIET A. BEARD
vs.                            } December Term, 1848.
JOHN H. LINTHICUM ET AL.

[STATUTE OF FRAUDS—PART PERFORMANCE—SPECIFIC PERFORMANCE.]

It has been repeatedly remarked by eminent judges, that the disposition, which at one time existed to relax the statute of frauds, should be opposed ; and, that the courts should take a stand against any further encroachment upon its provisions.

A party who seeks to take a case out of the statute on the ground of part performance of the contract, must make out, by clear and satisfactory proof, the existence of the identical contract, charged in the bill.

It is not enough, that the act relied on, is evidence of some agreement; but, it must be unequivocal and satisfactory evidence of the contract, charged in the bill.

The remedy, in cases of specific performance, must be mutual; and, if one of the parties is not bound, or is not able to perform his part of the contract, he cannot call upon the court to compel a performance by the opposite party.

---

[The object of this bill, which was filed by Harriet A. Beard, administratrix of John Beard, deceased, was the specific performance of a contract for the sale of land, alleged to have been entered into between the deceased husband of the complainant, and John H. Linthicum; and also a writ of *ne exeat* against the said Linthicum.

The bill stated that Beard, in his lifetime, had bought a parcel of land from George H. Stewart, for the sum of three thousand dollars, which he afterwards agreee to sell to Linthicum for the same price, increased by the interest which had accrued on the purchase money due to Stewart; and that Linthicum had agreed to give to Beard a bill of sale of certain negroes, to secure said payment. The bill further stated, that Linthicum took possession of the land in pursuance of the agreement, but that he had not paid any portion of the purchase money, or executed the bill of sale; but that he had actually sold one of the negroes, and applied the proceeds of the sale to other purposes, (although upon Beard's remonstrating with him, he had promised to apply it to said payment;) and that he was threatening to leave the state and carry the negroes with him.

Prayer for the specific performance of the agreement, an injunction to restrain Linthicum from selling the negroes, or removing them out of the state, and a writ of *ne exeat regno*, to prevent him from leaving the state.

Linthicum, in his answer, denied the making of the contract stated in the bill, and pleaded the statute of frauds thereto; and further stated that he did agree to give $1800 for the land, if Beard would procure the consent of Stewart to the sale, and have certain disputes relative to the boundaries of the land, settled; that Beard, at the time said conditional agreement was made, proposed to him to take possession of the land at once,

and have a final adjustment of the contract as soon as the consent of Stewart could be obtained ; that he accordingly did enter upon the land and occupied the same, (though he did not consider himself a purchaser thereof,) but that Beard never had procured the consent of said Stewart, or settled the disputes relative to the boundaries of the land ; that he never had agreed to mortgage any negroes to secure the payment of the purchase money of the land ; that the negroes alluded to belonged to his mother; and that he had no intention of removing himself or the negroes out of the state.

The answer of Stewart, who was made a defendant, stated that he never would have sanctioned so loose a contract as that charged in the bill, and that he had himself instituted a suit in chancery to obtain a sale of the lands in question, to satisfy his claim.

Certain testimony was afterwards taken, the effect of which will appear from the Chancellor's opinion ; and afterwards an agreement was filed to amend the bill, (if the Chancellor would have authorized such an amendment,) by striking out the allegation in regard to the interest which had become due since the purchase from George H. Stewart.

The case having been submitted at this term, the Chancellor delivered the following opinion :]

---

THE CHANCELLOR :

This is a bill for the specific performance of a parol contract to sell land, and the contract being denied by the answers, and the statute of frauds insisted on, an effort has been made, on the part of the plaintiffs, to take the case out of the statute of frauds by proving acts of part performance.

It has been repeatedly remarked by eminent judges that the disposition which at one time existed, to relax the statute of frauds, should be opposed, and that the courts should take a stand against any further encroachment upon its provisions, and not go beyond the rules and precedents already established.

Such was the language of Chancellor Kent in *Philips* vs. *Thompson*, 1 *Johns. Ch. Rep.*, 131, and such I am persuaded

will be the view which every one will take of the subject who will reflect carefully upon the consequences which must result from a different tendency.

The rule is believed to be firmly established, that to entitle a party to take a case out of the statute of frauds, on the ground of part performance of the contract, he must make out by clear and satisfactory proof the existence of the identical contract laid in his bill. It is not enough that the act relied on is evidence of some agreement, but it must be unequivocal and satisfactory evidence of the contract charged in the bill. *Philips* vs. *Thompson*, 1 *Johns. Ch. Rp.*, 131; *Parkhurst* vs. *Van Courtland, ib.* 273; 3 *Kent's Com.* 451; 2 *Story's Equity*, sec. 764. This court has upon several occasions been called upon to express its opinion upon cases resembling in principle the present, and the conclusions to which it has arrived after a careful consideration of the subject, have been adverse to the relief asked for.

The court, if it acts at all in such cases, must act upon the entire contract as laid in the bill. It must be executed in all its parts specifically and rigorously, and hence the indispensable necessity that each and every part of the agreement set up in the bill should be clearly established by the proof. *Owens* vs. *Baldwin and Wheeler, ante, page* 120; *Waters* vs. *Waters, ante, page* 196.

Unless this can be done, it is obviously better to send the plaintiff to a court of law, where relief can be given in damages, with a moderation agreeable to equity and good conscience, and where the various pretensions of the parties can be considered by a tribunal more competent to decide upon the extent of the actual injury sustained by the non-performance of the agreement.

In the present case, the contract as laid in the bill, is conceded not to be sustained by the proof, and hence the conditional agreement to amend the bill by striking out the allegation upon the subject of interest upon the purchase money. The right to amend this bill, and especially at this stage of the proceedings, is contested, and perhaps upon an examination of the books of practice and authorities, it would be found not to

be warranted; but the court does not now propose to decide the point, as even if the amendment be authorized, or the bill had originally taken the shape now proposed to be given to it, still, I think the plaintiff cannot have a decree, because she has not laid before the court that clear, definite and unequivocal proof of the contract in all its terms, which the rule requires.

So far as the bill, in this case, charges an agreement by the defendant to secure the payment of the purchase money of the land by a mortgage of slaves, there is a total and absolute failure of evidence, not a witness having spoken upon the subject, nor a single circumstance having been shown, from which such an agreement can be fairly inferred. It is true, some one or more of the witnesses do say something about the plaintiff's intestate having complained of the sale by the defendant of a slave; but the answer discloses a sufficient reason for this; and independent of the answer, it would surely be a random conjecture from this isolated and inconclusive circumstance, to come to the conclusion that the defendant had agreed to give a mortgage upon the slaves in question, to secure the payment of the purchase money of the land. It is surely a pertinent inquiry to ask, if such an agreement was made, why was not the mortgage given? There was unquestionably abundant time, and if the contract of sale had been definitively settled, and the terms agreed upon, it is difficult to conceive a sufficient reason for the non-execution of the mortgage.

I regard, therefore, this charge in the bill as wholly unsupported by the proof, and the rule being, that the identical contract in all its parts as set up in the bill, must be proved, it would follow that a failure of evidence in this particular would be fatal to the complainant's prayer for a specific performance.

But, conceding that this part of the contract is independent and separate from the residue, or that the giving the mortgage simply referred to the mode of payment; or that for any other reason, the plaintiff may have a specific execution of the residue of the agreement if proved, laying the stipulation about the mortgage out of view, still, I think, the complainant has failed to show herself entitled to the relief she asks for.

There is not, in my opinion, that clear and convincing proof of a contract for the sale of land and acts of part performance, which must be produced to take a case out of the statute of frauds. There was some agreement, no doubt, between these parties, but what it was, what were its terms and conditions, does not appear, and it is impossible, I think, to say that the act of part performance relied upon, could have been with no other view or design than to perform the agreement set up in the bill; which, as the cases prove, is indispensably necessary to entitle the party to a specific performance.

He must show acts, unequivocally referring to and resulting from that agreement, such as the party would not have done unless on account of that very agreement. In this respect, I think, the present case is deficient, and therefore a specific performance cannot be decreed.

But, there is another, and, in my judgment, insuperable objection to granting the complainant relief upon this bill. The intestate never was in a condition to complete the title, and the cases are abundant to show, that unless a party is ready and competent to perform the contract on his part, he cannot call for a specific performance from the other side. *Benedict* vs. *Lynch*, 1 *Johns. Ch. Rep.*, 370, and the cases referred to by Chancellor Kent in that case are conclusive upon the subject.

The title to the land in this case was, and is, in George H. Stewart, who sold to Beard, and to whom more is due than the land, according to the proof, would now sell for. Stewart says in his answer, that he never would have sanctioned such a loose contract as is set up by this bill, and it is alleged by him, and it is in proof, that he is now prosecuting an independent bill in this court, against the widow and heirs of Beard for the sale of the land to pay his claim, and he insists that he should not be embarrassed or delayed in the prosecution of his suit, by the proceedings in this.

The remedy in these cases of specific performance must be mutual, and if one of the parties is not bound, or is not able to perform his part of the contract, he cannot call upon the court to compel a performance by the opposite party. *Benedict* vs.

*Lynch*, 1 *Johns. Ch. Rep.*, 370. And it being perfectly clear in this case that Beard never was, and the complainant is not now, in a condition to perform his part of the contract, the relief asked for, must on that account be refused.

Upon the whole, I am of opinion, that the injunction must be dissolved, the *ne exeat* discharged, and the bill dismissed.

[No appeal was taken from this decree.]