THE AFRICANI HOME PURCHASE AND LOAN ASSOCIATION, Appellee, *vs.* JOHN A. CARROLL, Appellant.

*Opinion filed February 17, 1915—Rehearing denied April 8, 1915.*

1. LOAN ASSOCIATIONS—*certificate of organization must be filed for record within two years.* Unless the certificate of organization of a homestead and loan association is filed for record with the recorder of deeds of the proper county within two years the association ceases to be a corporation and forfeits its right to exercise any of the powers conferred by its charter.

2. SAME—*homestead loan association does not possess all the powers of ordinary corporations.* Corporations organized under the Homestead Loan Associations act do not possess all of the powers of corporations organized under the general Incorporation act, but are endowed with more limited powers and are subject to a more strict supervision by the State in the exercise of the powers conferred upon them by their charters.

3. SAME—*homestead loan association has no power to acquire real estate for general purposes.* A corporation organized under the Homestead Loan Associations act cannot acquire title to real estate for general purposes, but its power is limited to acquiring real estate which has been mortgaged to it or in which it has an interest, and a court of equity will not specifically enforce, at its instance, an ordinary contract for the purchase of real estate for general purposes.

4. SPECIFIC PERFORMANCE—*contract will not be enforced at instance of party against whom it could not be enforced.* Specific performance of a contract will not be decreed at the instance of a party against whom the contract could not be enforced.

5. SAME—*specific performance not a matter of absolute right.* Specific performance is not a matter of absolute right but rests in the sound discretion of the chancellor, who must, however, exercise such discretion according to settled legal rules and principles and not arbitrarily.

6. SAME—*contract, to be enforced, must be reasonable, certain and mutual.* A contract, in order to be specifically enforced, must be reasonable, fair, mutual and certain, and it will not be enforced against one party if incapable of enforcement against the other.

7. SAME—*equity will not lend its aid to enforce illegal contract.* A court of equity will not lend its aid to the specific enforcement of a void and illegal contract, even though the evidence shows that to do so would afford the most speedy way of adjusting equities between the parties which they might be able to enforce in some other proceeding.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

Appellee filed its bill in chancery in the superior court of Cook county to enforce the specific performance of a contract for the sale of certain real estate and to recover the title and possession of said real estate, which was described in the bill, consisting of a lot with a three-story flat-building thereon, used for residence purposes, known as No. 121 East Fifty-fifth street, in the city of Chicago. After interposing a demurrer to the bill, which was sustained, and leave having been granted to amend the bill, appellant answered the amended bill, denying the material allegations thereof. The cause was then tried by the chancellor and a decree entered in favor of appellee, which was, in effect, one for specific performance of the contract and ordering conveyance of the property to appellee. This appeal followed.

The original bill alleged that appellee is incorporated under the building, loan and homestead association laws of this State; that on March 27, 1907, William D. Neighbors entered into a contract with Robert Bartlett, who held the title to the premises in controversy, for the purchase of the same for the sum of $4700, payable as follows: Neighbors to assume a trust deed on the property for $2500, to pay $100 upon the execution of the contract, $400 when the title was found good by guaranty policy, and the balance of $1750 in monthly installments of $50 each, with interest on deferred payments. The bill further alleged that at the time this contract was made Neighbors was secretary of the appellee association, and acted for it in making the contract, which was afterwards, on May 4, 1907, assigned to appellee and the assignment duly recorded in the recorder's office of Cook county; that appellee took possession of the premises immediately after the execution of the contract and leased it to various persons for residence purposes; that afterwards Neighbors entered into a conspiracy

with Ethel H. Spence to cheat and defraud the appellee out
of its property, and for that purpose on January 9, 1910,
caused a forged assignment of said contract to be executed
by the association and placed of record and a deed to be
made to Miss Spence by William B. Walrath, to whom
Bartlett had in the meantime conveyed the legal title, sub-
ject to Neighbors' contract; that on April 25, 1910, Miss
Spence, in furtherance of the conspiracy, conveyed the prop-
erty by quit-claim deed to Bertha K. Chittenden; that the
deed to Mrs. Chittenden was, in fact, a mortgage to secure
the payment of money advanced by her to Neighbors for his
own use and benefit, and that Neighbors and Miss Spence
have failed and refused to account to appellee with refer-
ence to said transaction although often requested so to do.
The bill fails to allege either a tender of the purchase price
and an offer to perform the contract by appellee before fil-
ing the bill or excuse for non-performance of the contract
on its part. It makes Bartlett and his grantee, Walrath,
Ethel H. Spence, William D. Neighbors and Bertha K. Chit-
tenden defendants, and prays that the alleged forged as-
signment from appellee to Ethel H. Spence be set aside;
that all of the deeds above mentioned be canceled; that
the deed to Mrs. Chittenden be decreed a mortgage; that
Neighbors and Miss Spence be required to account for their
transaction in reference to said real estate; that Mrs. Chit-
tenden be required to account for all rents, issues and profits
by her collected, appellee offering to pay to her any sum
of money found due her on such accounting, including the
amount paid to Jacob Glos for the purchase of a certain
tax title to the premises; that the contract between Bartlett
and Neighbors may be specifically performed and defend-
ants decreed to make proper deeds of conveyance of the
premises to appellee, and that a receiver be appointed pend-
ing the determination of the cause, to take possession of
the premises and collect and preserve the rents, issues and

profits thereof. The bill concludes with a prayer for general relief.

A general demurrer was sustained to the bill, whereupon an amendment was filed, alleging that at the time appellee sought to acquire the title to said real estate it did so because its directors in good faith believed it would become needful and necessary for the location and maintenance of a business office in which to conduct its then exceptionally large business, and that it temporarily leased the premises, not at the time being ready to occupy the same but intending to do so shortly; that in December, 1909, its stockholders and directors decided to liquidate and wind up its affairs and business; that a meeting was called for that purpose and liquidators were named but that they never qualified, and that appellee has ceased to do business, but has been unable to dispose of and distribute its assets because of the wrongful acts of defendants.

Answers were filed to the bill as amended, denying the allegations in regard to the alleged fraudulent conduct of Neighbors and the others and that the deed to Mrs. Chittenden was a mortgage, and denying that appellee was a corporation, or that the property was necessary, at the time of its purchase or now, for the proper conduct of the business of appellee. The answers also set up the defense of *laches*, in that appellee knew of the deed to Miss Spence in January, 1910, but waited for over two years before filing its bill, in which time Mrs. Chittenden in good faith purchased the property, and also alleged that the contract sought to be enforced was *ultra vires* and therefore void and should not be specifically enforced. John A. Carroll, who purchased the property after the beginning of the suit, was allowed to intervene and adopt the answer of Mrs. Chittenden as his own.

The decree finds the facts, in the main, in accordance with the allegations of the bill, and decrees that the deed from Miss Spence to Mrs. Chittenden is a mortgage; that

the cause be referred to the master in chancery to take an account of the amount due Mrs. Chittenden on her said mortgage and the amount due from Neighbors to appellee; that upon the payment of the amount found due Mrs. Chittenden by the appellee within four months after the master makes his report, Mrs. Chittenden, and all persons claiming through or under her, convey and quit-claim said premises to appellee, and that they surrender said premises to appellee or to such person or persons as it shall direct, free and clear of all encumbrances, together with all deeds or writings in her custody or power relating to said mortgaged premises, and that in default of making the payment to Mrs. Chittenden of the amount so found due her, as therein provided, appellee's bill be dismissed. It appoints the Central Trust Company of Illinois receiver, with the usual power of receivers to take possession of the property, collect the rents, issues and profits, etc., until the further order of the court.

The evidence shows that appellee actively entered upon the discharge of its duties and functions as a building, loan and homestead association pursuant to the provisions of its charter. It received its charter on November 21, 1906, but neglected to file the same for record with the recorder of Cook county within two years, as required by law, or at any other time. A few meetings of its stockholders and directors were held but no considerable amount of money was paid into its treasury by the stockholders as dues. At a stockholders' meeting held on January 25, 1907, a motion was adopted "that the stockholders meet February 25 and pay into the funds of the association for the purpose of investing in real estate," and another motion was adopted appointing a committee "with full power to rent an office for the association." At a directors' meeting held March 4, 1907, the secretary submitted a financial report showing a balance of $13.15 in the treasury. On March 7, 1907, the directors adopted a resolution appointing a committee with

plenary power to select and purchase a building or buildings for the Africani Home Purchase and Loan Association, and on May 31, 1907, at a meeting of stockholders, resolutions were adopted that the secretary's salary be suspended indefinitely, that the assignment of the contract for the sale of real estate made by Neighbors to appellee be accepted and referred to a committee for record, and that the rented typewriter be sent back to the owner. There was no proof that at the time the premises in question were purchased such premises were needful or necessary for the growing business of appellee, as alleged in its amended bill of complaint.

On December 14, 1907, the State Auditor of Public Accounts notified appellee by letter that the report made by an examiner from his office showed the association was insolvent, and that unless proper action was taken by its officers and stockholders to either re-organize or liquidate its affairs he would be compelled to appoint a custodian and proceed according to the provisions of section 17 of the Homestead Loan Associations act. Pursuant to this letter a special meeting of the board of directors was held December 21, 1907, at which meeting a meeting of the stockholders was called for January 17, 1908, to consider the question of the liquidation or re-organization of the association. At the stockholders' meeting on January 17, 1908, a resolution was adopted that the association re-organize, and a committee was appointed for such purpose. Nothing, however, was subsequently done toward a re-organization, and at a meeting of the directors on January 23, following, a resolution was adopted that they recommend to the stockholders that the association liquidate its affairs and not try to re-organize. This is the last meeting, so far as the record shows, ever held by either the stockholders or directors of appellee, and it is apparent from the subsequent action of both its officers and stockholders that they understood and considered the association after that time to be extinct.

267 – 25

August 7, 1909, certain of the stockholders, viz., William D. Neighbors, A. L. Williams, L. W. Perkins, W. H. Robinson, E. I. McCrary and Henry Jones, entered into a written agreement setting out that the association was defunct, that the payments on the property in question were in arrears to the amount of $300, including back taxes and other expenses, and that the owner of the mortgage was about to foreclose. At that meeting it was agreed by those present that they, as stockholders of the now defunct Africani Home Purchase and Loan Association, should pay, *pro rata,* the amount of the above mentioned indebtedness and such other payments as were necessary to be made from time to time to carry out the terms of the contract, make repairs, etc., and share in the profits accordingly, and that the contract for the purchase of the property was to be assigned to them by the officers of the now defunct corporation, with the further stipulation that if any of the former stockholders desired to share in the profits of the same by paying their *pro rata* shares of the indebtedness, expenses, etc., they should be entitled to become parties to the agreement by so doing, but any person failing to pay his *pro rata* share of the present indebtedness should have no share in the profits accruing from the property or derived from the sale of the same. At about this time Neighbors purchased the interest of several of the other stockholders, and subsequently purchased the interest of all the others except that of A. L. Williams, with whom he was unable to agree upon a price. The assignments were in writing, and purported to transfer, assign and set over to Neighbors all right, title and interest in the property which such assignee had by reason of the ownership of certain shares of stock in the "Africani Home Purchase and Loan Association, a defunct corporation." In 1911 Neighbors induced the holder of the legal title of the premises, Ethel H. Spence, to convey the same to Bertha K. Chittenden by warranty deed, who, in turn, gave Neighbors a contract for the re-purchase of the

same upon the payment to her of the several amounts she had advanced. The bill does not charge Mrs. Chittenden with notice of 'the interest of appellee in the property, nor is there any evidence in the record that she took title to the property with notice of appellee's equity in the same.

It is stipulated that on March 27, 1907, Robert Bartlett held title to said premises, with other properties, in trust for the Northern Liquidation Company, as selling agent, under an agreement to share in the net profits from the sale of the same, and that the conveyances in relation to the same were as follows: Written agreement for sale of the premises, executed in duplicate, dated March 27, 1907, Robert Bartlett to William D. Neighbors, neither copy of which was ever recorded, with a written agreement indorsed on both copies dated January 18, 1910, by which indorsement the contract was assigned by William D. Neighbors to Ethel H. Spence; warranty deed dated March 2, 1908, and recorded on March 9, 1908, of Robert Bartlett and wife, conveying the premises to William B. Walrath; warranty deed dated January 17, 1910, and recorded on January 21, 1910, of William B. Walrath and wife, conveying the premises to Ethel H. Spence, the said deed containing the following clause: "This deed is made in pursuance of a contract made between Robert Bartlett and William D. Neighbors, dated March 27, 1907;" quit-claim deed dated January 17, 1910, and recorded on January 21, 1910, of Ethel H. Spence, conveying the premises to Edward C. VanDuzer; quit-claim deed dated April 25, 1911, and recorded on May 16, 1911, of Ethel H. Spence, conveying the premises to Bertha K. Chittenden; quit-claim deed dated November 27, 1911, and recorded on January 31, 1912, of Edward C. VanDuzer and wife, conveying the premises to Bertha K. Chittenden.

It appears from the evidence that on November 15, 1912, John A. Carroll entered into a contract with Mrs. Chittenden for the purchase of the property for $4600, and that

in pursuance of that agreement Mrs. Chittenden, at the instance of Carroll, conveyed the property by warranty deed, on February 6, 1913, to Wendell S. Merrick, who, in turn, conveyed the same by warranty deed to Carroll on February 8, 1913; that Mrs. Chittenden expended $1750.97 more in the purchase and improvement of the property than she received in rent returns from it during the time she held it, and that Carroll has expended about $3000 or more in making further improvements on the property. It is not alleged in the bill or shown by the proofs that appellee tendered to Mrs. Chittenden the amount due her on the property, or that the association has the funds in its treasury with which to pay the same or that funds can be raised for that purpose without levying an assessment on its members.

A number of errors have been assigned on the record and argued in this court, but as a consideration of two of them will suffice, viz., those with reference to the power of the appellee to purchase and hold real estate and to enforce specific performance of such contracts, under the facts and circumstances disclosed by the pleadings and proofs in this record we have deemed it unnecessary to consider the others.

WILLIAM J. PRINGLE, EDWIN TERWILLIGER, JR., and ROBERT HUMPHREY, for appellant.

DAVID F. MATCHETT, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

It is conceded that the appellee association never filed in the office of the recorder of deeds of Cook county the certificate of organization issued by the Secretary of State, as required by section 3 of the Homestead Loan Associations act. (Hurd's Stat. 1913, p. 588.) In the case of *People* v. *Mackey,* 255 Ill. 144, we held that the failure of a corporation to file the certificate of organization with the

county recorder within two years, as required by section 4 of the general Incorporation act, (Hurd's Stat. 1913, p. 566,) which is similar to section 3 of the Homestead Loan Associations act, was fatal to the legal existence of the corporation. In that case, on page 158 of the opinion, it was said: "The failure to record the certificate for two years after the date of the license, *ipso facto,* by virtue of the language of the statute, ended the corporate existence. There was thereafter no license to organize a corporation. That had been revoked by the statute. There were no subsequent proceedings, for they had all become void. In this situation nothing short of a complete re-organization would resuscitate the defunct corporate body. The privilege of being a corporation had passed from the defendants and had to be again acquired from the State." The law is the same for homestead and loan associations as for other corporations, and unless such an association files for record with the recorder of deeds of the proper county its certificate of organization within two years it ceases to be a corporation and has no right to exercise any of the powers conferred by its charter.

Appellee is organized under the Homestead Loan Associations act of this State. Corporations organized under that act do not possess all of the powers of corporations organized under the general Incorporation act, but are endowed with more limited powers and are subject to a more strict supervision by the State in the exercise of the powers conferred upon them by their charters. They are required to make annual reports of their affairs to the Auditor of Public Accounts. They are subject to frequent examination by the State authorities, and must not only be going concerns but also profitable to their stockholders, and when an examination of their affairs shows an impairment of their assets to such an extent that they do not exceed the dues paid in, with interest thereon at the rate of three per cent per annum for the average time invested, or that they

are conducting their business in a fraudulent, illegal or un-
safe manner, it is the duty of the Auditor of Public Ac-
counts to appoint a custodian for such associations and call
a special meeting of the shareholders and lay the matter be-
fore them and require a re-organization or liquidation of
the affairs of such associations, to be effected in one of the
methods pointed out by the statute. (Hurd's Stat. 1913,
chap. 32, pars. 91c, 91d, 91f.) If the stockholders fail to
arrange for a re-organization or voluntary liquidation of
such associations, it becomes the duty of the Auditor of
Public Accounts to report such fact to the Attorney Gen-
eral, whose duty it is to institute proceedings for the pur-
pose of winding up their affairs. (Par. 91h.) The pro-
visions for an annual statement of their affairs, frequent
examinations under the supervision of the State Auditor,
and a forfeiture of their charters whenever it is found that
such associations are conducting their business in a fraudu-
lent, illegal, unsafe or unprofitable manner, were evidently
enacted for the purpose of confining such corporations to a
transaction of such business, only, as is strictly within their
charter powers.

The powers of building, loan and homestead associa-
tions organized under the Homestead Loan Associations
act, as set forth in section 1 thereof, (Hurd's Stat. 1913,
p. 587,) are limited to "the purpose of building and im-
proving homesteads and loaning money to the members
thereof only;" and with respect to their power to acquire
and hold real estate, such power is set forth in section 13
of the same act, which provides as follows: "Any loan
or building association incorporated by or under this act
is hereby authorized and empowered to purchase at any
sheriff's or other judicial sale, or at any other sale, public
or private, any real estate upon which such association may
have or hold any mortgage, lien or other encumbrance, or
in which said association may have an interest, and the real
estate so purchased, to sell, convey, lease, mortgage or ex-

change for other real estate and to dispose of such real
estate so acquired at pleasure to any person or persons
whomsoever."

The rule for construing statutes of this character is
stated in *Fritze* v. *Equitable Building and Loan Society,*
186 Ill. 183, as follows: "It is well settled that the pow-
ers of a corporation organized under a legislative charter
are only such as the statute confers, and the enumeration of
these powers implies the exclusion of all others. (*Thomas*
v. *Railroad Co.* 101 U. S. 71.) The rule of construction
applicable to statutory provisions is, 'that every power that
is not clearly granted is withheld, and that any ambiguity
in the terms of the grants must operate against the corpo-
rations and in favor of the public.' (*American Loan and
Trust Co.* v. *Minnesota and Northwestern Railroad Co.* 157
Ill. 641.) If the power claimed is withheld, 'it is regarded
as a prohibition against the exercise of such a power.'" To
the same effect is *People's Loan and Homestead Ass'n* v.
*Keith,* 153 Ill. 609.

In *National Home Building Ass'n* v. *Bank,* 181 Ill. 35,
in construing the provisions of the statute in regard to ac-
quiring real estate, it was held that building and loan as-
sociations could not acquire and hold any real estate except
such as had been mortgaged to it or in which it had an in-
terest. On pages 41 and 42 of the opinion it is said: "The
purpose of this corporation is the raising of funds to be
loaned to its members upon the security of its stock and
unencumbered real estate. Manifestly, the business of trad-
ing in real estate or acquiring the same, except as inci-
dental to their legitimate business, is wholly foreign to the
purpose for which the State has created such corporations
and conferred upon them corporate powers. They have no
power to take and hold real estate, and contracts made for
the purchase of it are not enforceable. (Endlich on Build-
ing Associations, secs. 305-308.) * * * Such corpora-
tions are not authorized, either by their charters or as an

incident to their existence, to acquire or hold any real estate, except such as has been mortgaged to them or which they may have an interest in. Not only is this the rule to be derived from the act of the legislature authorizing their incorporation, under the general principles of law, but it is, and always has been, against the policy of the State to permit corporations to accumulate landed estates, or to own real estate beyond what is necessary for their corporate business or such as is acquired in the collection of debts. (*Carroll* v. *City of East St. Louis,* 67 Ill. 568; *People* v. *Pullman Palace Car Co.* 175 id. 125; *United States Trust Co.* v. *Lee,* 73 id. 142; *First M. E. Church of Chicago* v. *Dixon,* 178 id. 260.) It is also a settled principle of American jurisprudence. (5 Thompson's Law of Corporations, sec. 5772.) If a building and loan association were permitted to invest its money in the purchase of real estate or to traffic or trade in such property instead of keeping within the powers conferred upon it by loaning such money and collecting it, it would not only be exercising powers not granted, but it would be carrying on a business inconsistent with the purpose of its creation and against the fixed and uniform policy of the State. In *People ex rel.* v. *Chicago Gas Trust Co.* 130 Ill. 268, it was said (p. 292): 'The word 'unlawful,' as applied to corporations, is not used exclusively in the sense of *malum in se* or *malum prohibitum.* It is also used to designate powers which corporations are not authorized to exercise, or contracts which they are not authorized to make, or acts which they are not authorized to do,—or, in other words, such acts, powers and contracts as are *ultra vires.*' In *Central Transportation Co.* v. *Pullman Palace Car Co.* 139 U. S. 24, the result of the decisions as to the exercise of powers not granted is summed up, as follows: 'All contracts made by a corporation beyond the scope of those powers are unlawful and void and no action can be maintained upon them in the courts,—and this upon three distinct grounds: the obligation of every-

one contracting with a corporation to take notice of the legal limits of its powers; the interest of the stockholders not to be subjected to risks which they have never undertaken; and above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law.'" To the same effect is *United States Brewing Co.* v. *Dolese & Shepard Co.* 259 Ill. 274, and cases cited.

While it is true that section 13 has been amended and in its present form, as heretofore set out, permits the exchange of property which a homestead and loan association has lawfully acquired for other property, which was not the case when *National Home Building Ass'n* v. *Bank, supra,* was decided, the principles announced in that decision are still the law.

The above cases are decisive of the case at bar. It is admitted that the title and possession of the property are not in appellee but in Carroll, as grantee of Mrs. Chittenden, and that the only right or interest which appellee has in the property is by virtue of the assignment of the contract by Neighbors to it, and the payments, largely from rents derived from the property, claimed to have been made by it, through Neighbors, on the purchase of the property pursuant to the contract. It is clear, under the above authorities, that appellee had no power to enter into the contract or to purchase and hold the real estate in question in that way, and for a court of chancery to grant the relief sought by the bill would be not only lending its aid to assist the appellee in violating the law, but would be actively enabling it to do that which the law forbids it to do. Under the uniform holdings of this court specific performance of the contract cannot be granted under such circumstances.

We do not wish to be understood as saying that where a homestead and loan association has unlawfully acquired title to real estate such real estate cannot be disposed of and the proceeds held for the benefit of the stockholders of the association. The association could be compelled to dis-

pose of it, and a shareholder of such an association could
by a proper suit bring about the dissolution of such corpo-
ration and a distribution of its assets among those entitled
thereto.    But that is not this case.    The bill in this case
seeks squarely to enforce a contract for the sale of real es-
tate.    The association is seeking to become the owner of
the real estate in question contrary to the express law of
this State as such law has been construed by this court, but
for what purpose is not disclosed in the bill.    The decree
found that this real estate was, in part, paid for by money
of the association, so that the question is squarely raised as
to the power of the appellee to become the owner of real
estate for general purposes.    We think the contract was
*ultra vires* and that the association is not entitled to enforce
such contract, and the decree granting the relief sought was
erroneous.

If appellant were seeking to specifically enforce the con-
tract against appellee there could be no question but that
the defense of *ultra vires* interposed in this case would con-
stitute a good defense to such a suit.    The rights of the
parties in the premises are reciprocal.    Specific performance
of a contract will not be decreed at the instance of a party
against whom the contract could not be enforced.    (*Bauer
v. Lumaghi Coal Co.* 209 Ill. 316.)    It is not a matter of
absolute right but rests in the sound discretion of the chan-
cellor, to be exercised as the facts and circumstances in each
case and the equities between the parties may require.    It
is not an arbitrary discretion, but is one that is governed
by well understood and well settled legal rules and prin-
ciples of law.    (*Chicago, Burlington and Quincy Railroad
Co. v. Reno,* 113 Ill. 39; *East St. Louis Railway Co.* v.
*City of East St. Louis,* 182 id. 433; *Beach v. Dyer,* 93 id.
295; *Allen v. Woodruff,* 96 id. 11.)    A contract, to be
specifically enforced, must be reasonable, fair, just, mutual,
certain and unambiguous, (*Barrett v. Geisinger,* 148 Ill. 98;
*Koch v. National Union Building Ass'n,* 137 id. 497; *Gould*

v. *Elgin City Banking Co.* 136 id. 60;)  and if incapable of
being specifically enforced against one of the parties it will
not be enforced against the other.    (*Bauer* v. *Lumaghi Coal
Co. supra; Tryce* v. *Dittus,* 199 Ill. 189; *Kuhn* v. *Epp-
stein,* 219 id. 154; *Ulrey* v. *Keith,* 237 id. 284.)    In *Bauer*
v. *Lumaghi Coal Co. supra,* the rule is stated as follows:
"As a general rule, specific performance will not be decreed
in any case where mutuality of obligation and remedy does
not exist.  *  *  *  The general principle is, that where the
contract is incapable of being enforced against one party,
that party is equally incapable of enforcing it against the
other."   In *Baird* v. *Linthicum,* 1 Md. Ch. 345, Chancellor
Johnson held "that if one of the parties is not bound or is
not able to perform his part of the contract he cannot call
upon the court to compel specific performance by the op-
posite party."   The facts in this case bring the contract in
question well within the rule above announced.

It appears very clearly from the evidence that one of
the main objects, if not the only object, in filing the bill was
to enable A. L. Williams to recover the several amounts
paid by him into the treasury of appellee as a member of
the association.   The evidence shows that he and the ap-
pellant, Carroll, by assignment from Neighbors, were the
owners of all the stock and assets of the association.   Wil-
liams undoubtedly has a right to a return of his *pro rata*
share of the assets of the association, and to require that
Neighbors, and all other members of the association, in a
proper proceeding account for all moneys and property of
the association that have come into their hands or posses-
sion.   But his remedy is not by invoking the aid of a court
of chancery to decree specific performance of a contract the
appellee had no lawful power or authority to make, and
thereby invest it with the legal title and possession of real
estate which it has no legal right to own or possess.   Courts
of equity cannot lend their aid to the specific enforcement
of void and illegal contracts and agreements, even where

the evidence in the record shows that to do so would afford the most speedy way of adjusting equities between the parties. Long established rules and well settled principles of law cannot be wholly disregarded and made to yield to the seeming equities of any particular case, merely because the party aggrieved has misconceived the proper proceeding to be instituted in a court of chancery for the accomplishment of the purpose sought.

For the reasons given we are constrained to hold that the decree of the superior court must be reversed and the cause remanded to that court, with directions to dismiss appellee's bill for want of equity.

*Reversed and remanded, with directions.*