(No. 14540.—Appellate Court reversed.)
WILLIAM G. WURN, Plaintiff in Error, vs. JOSEPH M.
BERKSON et al. Defendants in Error.

*Opinion filed October 21, 1922—Rehearing denied Dec. 8, 1922.*

1. SPECIFIC PERFORMANCE—*remedies between the parties must be mutual or contract cannot be enforced.* Specific performance will not lie where the remedies between the parties are not mutual, as where the party against whom specific performance is sought cannot have, as a return for such performance, all that he contracted for in the original agreement.

2. SAME—*when omission of necessary party precludes enforcement of contract—cross-bill.* Where one has contracted for a lease and for the improvement of the premises by the owners, the contract being signed by himself and his wife although the wife's name is not mentioned in the body of the agreement, he should make her a party to a proceeding against the owners for specific performance; but the fact that she was omitted does not give the defendants the right to have affirmative relief by cross-bill praying for the removal of the contract as a cloud on their title.

3. LEASES—*what amounts to ratification of contract for lease— Statute of Frauds.* While an agent's authority to make a contract for a five-year lease must be in writing to satisfy the Statute of Frauds, the transaction is taken out of the statute by ratification of the contract where the principals have signed a lease made pursuant to negotiations arising out of the contract, of which they had knowledge, and the lease itself states that it was executed in conformity with the contract.

4. SAME—*a contract may be interpreted by reference to lease made pursuant thereto.* In a suit for specific performance of a contract for a lease the defendants cannot object that the terms of the contract are ambiguous, where they signed a lease giving the contract a construction agreed upon by all the parties as to the particular ambiguity complained of, and which is more advantageous to them than the meaning they contend for; and the fact that the lease contains more agreements than are required in the contract does not preclude its consideration in construing the contract.

5. PRINCIPAL AND AGENT—*when payment of earnest money to broker is a sufficient compliance with contract for lease.* Defendants to a suit for specific performance of a contract for a lease can

not allege non-performance of the complainant's agreement to pay a certain sum as earnest money to be applied on the rental, where the complainant paid the money to the defendants' broker, who was employed by them to secure a tenant.

WRIT OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

S. G. GRODSON, (MORRIS K. LEVINSON, of counsel,) for plaintiff in error.

ANDALMAN, KOSTNER & ARVEY, (EDWIN J. RABER, M. N. ANDALMAN, and MAX C. LISS, of counsel,) for defendants in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error filed a bill for specific performance in the superior court of Cook county seeking to reform certain descriptions of property set out in a contract entered into between him and the defendants to the bill and to compel specific performance of such contract on the part of the defendants. Plaintiff in error charges in his bill that he entered into a contract with Morris H. Berkson, one of the defendants, by the terms of which Berkson agreed to construct a garage upon certain property located on Halsted street, in the city of Chicago, having a frontage of 75 feet on Halsted street and a depth of 125 feet to the alley. The garage was to be built in accordance with the ordinances of the city of Chicago, to have a gas tank of one thousand gallons capacity, an oil tank of one hundred gallons capacity, heating apparatus, wiring, fixtures, office room, etc. Plaintiff in error by the agreement was to lease the garage for a term of five years, with an option of renewal at an increased rental for a period of five years. Rental

during the first year of the term was to be $175 per month, $200 per month for the next three years and $225 during the balance of twelve months. The contract provided for a deposit of $1000 with the party of the first part, to be applied as rental on the first part of the lease term, $500 as earnest money to apply as good faith and further consideration of the transaction, and that when the second party commences occupation of the garage the earnest money is to be applied as rental. The contract was signed by Morris H. Berkson, by Isador Berkson, and by plaintiff in error and Anna J. Wurn, his wife. The bill avers that a short time after the making of the contract Morris H. Berkson and his wife conveyed the property in question to a party named Rosenthal, who on the same day conveyed it to all the defendants in error, including Morris H. Berkson. The bill avers that on September 15 the five defendants owned the premises in question; that Morris H. Berkson held the title in trust for himself and the rest of the defendants. It is alleged that there was no consideration for the transfer by Morris H. Berkson and wife to Rosenthal or for the conveyance by Rosenthal to the defendants; that the conveyance was for the purpose, only, of vesting the title in all of the defendants, who were and had been the actual owners. The bill charges that in pursuance of the contract negotiations were had with all the defendants as the building of the garage progressed, concerning the matter of a form of lease to be executed; that the plaintiff in error deposited the $500 earnest money with one Engelstein, who is alleged in the bill to have been the defendants' broker in the transaction; that the plaintiff in error devoted a great deal of time in attending to the construction of the building and expended various moneys to such purpose; that the building was ready for occupancy on March 17, 1916; that on that day the five defendants and the plaintiff in error and his wife met to execute the lease which had been finally agreed upon by them. A copy

of the lease was executed by the five defendants and a duplicate was executed by plaintiff in error and his wife. The plaintiff in error tendered his copy of the lease to the defendants with $500 to complete the advance payment of $1000, but the defendants refused to accept it or to deliver a copy of the lease signed by them unless $1000 should be paid to them at that time. Plaintiff in error avers that he is ready, able and willing to comply with all things required of him by the contract of September, 1915, and is willing to enter into a lease similar to the one signed by the parties on March 17, 1916, and by his bill tenders the sum of $500. He prays that the original contract may be reformed as to the description of the property which is made the subject matter of the contract and lease and that it be enforced as reformed.

Defendants filed joint and several answers, also a cross-bill seeking to have the contract of September, 1915, which was filed for record, removed as a cloud upon their title. By their answer they deny that at the time of the making of the contract in September, 1915, any of the defendants other than Morris H. Berkson owned the property in question; deny that the contract has been complied with by the plaintiff in error, and aver that while the name of Anna J. Wurn was left out of the body of the contract of September, 1915, the same was done through mistake and inadvertence; that she signed the contract and also the lease finally agreed upon in March, 1916; that she is a necessary party to the bill for specific performance, and for that reason specific performance will not lie.

Evidence was heard on the bill and cross-bill, and the superior court entered a decree granting the prayer of the plaintiff in error's bill and dismissing the cross-bill for want of equity. On appeal to the Appellate Court that court reversed the decree of the superior court, finding that plaintiff in error was not entitled to specific performance, and it remanded the cause to the superior court, with directions to

grant the prayer of the cross-bill and remove the contract in question as a cloud upon the cross-complainants' title and dismiss the original bill for want of equity.

Plaintiff in error contends that having complied with all of the terms of the contract he is entitled to specific performance thereof by the execution and delivery of a lease in conformity with the one agreed upon in March, 1916, and possession of the premises thereunder. Defendants in error contend that the Appellate Court was right in reversing the decree of the superior court for the reason that Anna J. Wurn was not made a party to the proceedings and that remedies are not mutual as to her; that the contract of September, 1915, is uncertain, vague and ambiguous; that the lease signed by the parties but not delivered was a new and different agreement from that of September, 1915; that Isador Berkson did not have authority, either written or verbal, to bind any of the other defendants by the contract of September, 1915; that the parties defendant are entitled to the defense of the Statute of Frauds.

Considering first the objection that Anna J. Wurn was not made a party to plaintiff in error's bill, we find that the record shows that she signed the contract of September, 1915, though her name does not appear in the body of the contract. She was named as one of the lessees and signed the plaintiff in error's copy of the lease as the same was finally agreed upon in March, 1916.

While plaintiff in error alleges in his bill that he is willing to enter into and execute a lease similar to that agreed upon in March, 1916, he does not, and, of course, could not, agree that his wife would sign such lease. While his bill avers that he is entitled, under the contract of September, 1915, to a lease similar to the one executed, he in nowise attempts to make his wife a party to the proceedings and she in no way appears in any capacity in which she could be bound by a decree of the superior court to execute such a lease, nor does she agree in this record so to do. It

seems clear, under the negotiations pertaining to the lease, that if defendants are compelled to enter into such a lease, they, on the other hand, have the right to have the same signed by Mrs. Wurn as a party lessee. There is nothing in the record giving to any court power to compel such signing on her part, nor is such offered. She is not a party complainant, and plaintiff in error does not seek to have the original contract reformed to show that she was a party thereto and that he had a right to have her made a party defendant in case of her refusal to sign the lease. There is nothing upon which to base a decree of a court binding her in this transaction. Specific performance against her could not be had by defendants in error. The rule is that specific performance will not lie where the remedies between the parties are not mutual, and where the party against whom specific performance is sought cannot have, as a return for such performance, all that he contracted for in the original agreement. (*Ulrey* v. *Keith,* 237 Ill. 284; *Lancaster* v. *Roberts,* 144 id. 213; *Winter* v. *Trainor,* 151 id. 191.) The conduct of both plaintiff in error and his wife in the negotiations following the making of the contract of September, 1915, up to and including the signing by them of the lease of March, 1916, shows that it was intended that she be a party to the original contract. This being true, defendants in error would be entitled to have a lease signed by her. In order for plaintiff in error to be in a position in this case to give defendants in error that mutuality of remedy which equity requires before a contract becomes enforcible, Mrs. Wurn must, of necessity, have been a party to the proceeding, either as a party complainant seeking a reformation of the original contract so as to show her a party thereto, or as party defendant in order to establish that plaintiff in error had a right to a lease signed by her. Nothing of this kind was done. To hold now, in such condition of the record, that plaintiff in error is entitled to specific performance of the original contract by the execution of a lease

similar to that signed but not delivered in March, 1916, but which lease is not to be signed by Mrs. Wurn, is to require from defendants in error all the benefits of such a contract to plaintiff in error but to deny them one of the substantial benefits flowing to them from this transaction,—that is, the additional signature of Mrs. Wurn to the lease.

Under the condition of the record specific performance should have been denied, and the superior court erred in not so decreeing. This being true, the Appellate Court did not err in reversing the decree and remanding the cause to the superior court, with directions to dismiss plaintiff in error's bill. The Appellate Court, however, in remanding the cause also directed that the relief prayed in the cross-bill,—that is, that the contract of September, 1915, be removed as a cloud,—should be accorded. The fact that plaintiff in error did not have all the necessary parties in the proceeding under his bill does not, of itself, give the defendants in error a right to have affirmative relief on the cross-bill. Whether or not they are entitled to such relief depends not upon whether proper parties are in court on the original bill but whether the record sustains the allegations of the cross-bill. The cross-bill is for affirmative relief. Its averments were that Isador Berkson, who signed the contract of September, 1915, on behalf of Morris H. Berkson, had no authority to so sign the contract and that the defendants did not ratify the act of Isador in so signing; that the approval or ratification of Isador's act must be in writing to comply with the Statute of Frauds. The cross-bill also avers that the contract is uncertain and indefinite and that the filing of the contract for record constitutes a cloud on the cross-complainants' title.

Considering first the objection of want of authority on the part of Isador Berkson to sign the name of Morris H. Berkson and that his act was not ratified, the record shows that all of the cross-complainants signed a lease made in pursuance of the negotiations between them and plaintiff in

error arising out of the contract, which Isador signed on behalf of Morris. The record shows, also, that throughout the months between September, 1915, and March, 1916, Morris and the other defendants in error knew of the transactions being carried on in the matter of leasing the premises and building a garage; that the transfer of the property to one Rosenthal, who re-transferred it to Morris and his brothers, was at the instance of the banker who was furnishing the money with which to build this garage. The record abundantly shows that at the time Morris and the other defendants signed the lease in March, 1916, they all had knowledge of the signing of the contract by Isador on behalf of Morris, and the lease itself states that it is made in conformity with that contract. The signing of the lease, if the same is to be considered as in conformity with the original contract, must be taken as a ratification of Isador's act in signing the original contract and takes that transaction out of the Statute of Frauds.

Coming then to the ground alleged in the cross-bill that the contract is uncertain and ambiguous, the record shows that the contract misdescribed the property by giving the wrong street numbers. It is not now here urged, however, that the superior court erred in finding that the property in question as described in the lease of March, 1916, was the property intended to be covered in the original contract or that the superior court erred in reforming the contract in that regard, and that feature of the allegations of the cross-bill may be dismissed without further consideration.

But it is contended that the contract is uncertain and ambiguous in other respects. First, it is said that the lease which was finally signed though not delivered, embodied agreements not within the original contract and was a different lease from that contemplated by the original contract. The only provisions of the original contract regarding a lease were those pertaining to the term of years and rental, and are as follows: "Party of the first part agrees

to lease said above described garage to party of the second part on the following rental for a term of five years: $175 per month during first twelve months, commencing as soon as building is ready for occupancy; $200 per month for the next three years, and $225 during balance of twelve months." The contract also agreed to give the lessee an option for renewal of the lease for a period of five years at a rental of $250 per month. It is contended by defendants in error that the provision with reference to the last twelve months of the term is ambiguous, and that the consideration, "and $225 during balance of twelve months," if taken to mean what it says, provides a rental of but $225 for the entire year, while the lease executed in March, 1916, provides a rental of $225 per month during the last twelve months. This objection is utterly without merit. In the first place, the lease, while not declared upon in this case and not delivered, may be taken as evidence of what the original contract meant with reference to its terms. Moreover, since all of the parties have considered the rental for the last twelve months as being a monthly rental of $225, defendants in error cannot be heard to complain that the construction given it by the parties is more advantageous to them than that which they now say is the meaning of the language used in the contract.

It is also argued the lease has in it many terms not referred to in the contract and therefore cannot be used as evidence of what the contract meant. All of the provisions of the contract are contained in the lease. The parties to the contract certainly contemplated that the lease should be drawn recognizing the rights of the parties under the original contract and protecting their rights under a tenancy of this character. This was done, and it cannot be an objection that a lease was later entered into containing other agreements so long as those required in the original contract are incorporated therein.

It is also urged by defendants in error that plaintiff in error refused to comply with the contract and to deposit the amount of money required thereby. The record shows that at the meeting in March, 1916, a disagreement arose between the parties as to the amount of deposit necessary. Defendants in error contended that $1000 should then be deposited, while plaintiff in error contended that the $500 deposited with Engelstein as earnest money was under the contract to be considered a part of the $1000 advance payment of rent. This appears to have been the reason why the lease was not delivered. Defendants in error contend that since Wurn made out the check for $500 to Engelstein they had no right to demand the money of Engelstein; that the payment could not be considered as a payment to them on a deposit. Engelstein testified that he held the money for the benefit of the parties to the lawsuit. The record clearly shows that he was the broker of the defendants in error in securing for them a tenant for the premises in question. It is evident that payment by plaintiff in error to Engelstein was such a deposit as was required by the contract. Whether or not an additional sum of $1000 was to be deposited at the commencement of the term of the lease must be determined from the language of the instruments. The original contract provided: "Said party of the second part agrees to deposit $1000 with the party of the first part, to be applied as rental on the first part of this lease term. Said party of the second part does hereby deposit $500 as earnest money to apply as good faith and further consideration of this transaction, and when said second party commences occupation of garage said earnest money is to apply as rental." Touching this question, the lease, by the seventeenth clause thereof, provides as follows: "The lessors do hereby acknowledge receipt of the sum of one thousand ($1000) dollars. from the lessees, which said one thousand ($1000) dollars is to apply on account of the rent hereby reserved for the first six (6) months of the term de-

mised." It seems clear from the language of the contract as evidenced by the language of the lease here quoted, that it was the intention of the parties that $1000 should be paid as an advance payment of the first six months of rent by the time the party went into possession, and that as an evidence of good faith $500 of such advance rent was deposited at the time of the making of the contract for the lease.

Considering the contract in connection with the lease, we are of the opinion that it is not of that degree of uncertainty which precludes, under proper pleading and proof, its enforcement by specific performance. We are of the opinion, therefore, that on the record here presented defendants in error are not entitled to have the contract removed as a cloud upon their title, and the Appellate Court erred in so holding.

This cause coming on for further consideration on petitions for rehearing, Anna J. Wurn, who is a party to this record as defendant to the cross-bill filed herein and as plaintiff in error complaining of the decree of the Appellate Court granting the prayer of the cross-bill, tenders in this court her consent to be bound by the contract in question and the decree entered by the superior court or to be entered by this court in the cause, and to execute and deliver in duplicate said lease. She thus waives any right to be excepted from the provisions of said contract and lease or such decree.

The decree of the Appellate Court will therefore be reversed and the decree of the superior court will be modified to require Anna J. Wurn to execute and deliver in duplicate the lease herein referred to, and as so modified the decree will be affirmed.

> *Decree of Appellate Court reversed.*
> *Decree of superior court modified and affirmed.*