Peru Wheel Company, Appellant, v. Union Coal Company, Appellee.

Gen. No. 9,272.

Opinion filed April 28, 1938. Rehearing denied May 25, 1938.

BURNETT M. CHIPERFIELD, CLAUDE E. CHIPERFIELD and ROBERT B. CHIPERFIELD, all of Chicago, for appellant.

DUNCAN & O'CONOR, of Ottawa, and J. E. MALONE, JR., of La Salle, for appellee; A. J. O'CONOR, J. E. MALONE, JR. and GEORGE L. HERBOLSHEIMER, JR., of counsel.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

This was a suit brought by appellant in March, 1937, to restrain appellee from a violation of the terms of a contract. Appellee filed its motion to dismiss the complaint on the grounds that the instrument was lacking in mutuality and terminable at the option of either party. The court sustained the motion. Appellant elected to abide its complaint. This appeal arises from the order of the court dismissing the complaint with judgment against plaintiff for costs.

Prior to February 15, 1901, appellant company operated under the name of Peru Plow & Wheel Company, and appellee operated under the name of the LaSalle County Carbon Coal Company. It appears by the complaint that prior to the 1st day of October, 1900, the coal company was operating what is here called the Union Shaft. It had a tramway or elevated track running from this shaft to premises which it owned and where it was dumping the refuse from the above shaft. This tramway crossed a strip of land owned by the wheel company, which lay between the mine and the tract upon which the coal company was dumping the refuse. A dispute arose between the parties over the defendant's use of the plaintiff's land as aforesaid. The parties submitted their controversy to arbitration. It was stated in the articles of agreement with reference to the above submission that, "Whereas the first party (meaning the coal company) now occupies and desires to continue to occupy a right of way across the premises of the second party (meaning the wheel company), for bridge or tramway as hereinafter de-

scribed, for the purpose of transporting rock, dirt, and other refuse from the Union Shaft now owned and operated by the said first party, to ground owned by first party on the south side of the right of way of the Chicago, B. & Q. R. R. Co., and the privilege and the use and enjoyment of said right of way by the first party and the free delivery of said screenings to the said second party is to be taken into consideration in the fixing of the price of said screenings delivered as aforesaid."

It was further provided that the arbitrator should draft and submit to the parties a contract which in substance should contain a lease of the right of way over which the tramway was constructed, and the price that the wheel company should pay the coal company for coal screenings to be furnished it for manufacturing purposes, at such times and in such quantities as the wheel company might require. Pursuant to the foregoing, the arbitrator made his written findings and submitted to the parties the following written instrument in settlement of their disputes, which they duly executed under date of February 15, 1901, and which is as follows:

"THIS INDENTURE, MADE and entered into by and between the Peru Plow & Wheel Company, of Peru, Illinois, party of the first part, and the LaSalle County Carbon Coal Company, of LaSalle, Illinois, party of the second part, the contracting parties being corporations organized, existing and doing business under and by virtue of the laws of the State of Illinois;

"WITNESSETH, That the said party of the first part in consideration of the covenants of the said party of the second part hereinafter set forth does by These Presents lease to the party of the second part the following described real estate for the purposes hereinafter described, to-wit: A right-of-way over and across that portion of the real estate now owned by the party

of the first part now occupied by the bridge or tramway built, used and operated by the party of the second part for the purpose of hauling rock, slate, dirt and other refuse from the Union Shaft of the second party to the ground now owned by said second party and lying on the South side of the right-of-way of the Chicago, Burlington & Quincy Railroad Company.

"To HAVE AND TO HOLD the same to the said party of the second part from and after the date of this indenture and so long as the said second party, its successors or assigns, shall continue in the operation of the said Union Shaft by the hoisting of coal thereat.

"And the said party of the second part, its successors and assigns, in consideration of the leasing of the premises as above set forth, covenant and agree with the party of the first part, its successors and assigns, that they will keep said bridge or tramway in good and safe condition and repair and maintain the same as to the width of its spans and its height above ground, the same substantially as it is at this date, and shall furnish and deliver to the said party of the first part, its successors and assigns, at any point along said tramway or bridge on the property of the said party of the first part, which said first party shall designate, screenings as the said party of the first part, its successors or assigns shall need the same in their manufacturing business conducted upon the real estate above described, the same to be furnished and delivered as aforesaid at the price hereinafter named and during such time as the said party of the second part, its successors or assigns, shall continue in the operation of the said Union Shaft by the hoisting of coal therefrom, and in such quantities as the said party of the first part, its successors or assigns, may require for the manufacturing business conducted on said property by said party of the first part, its successors or assigns; provided that in the event of a strike of the employees

of the said party of the second part, its successors or assigns, the said party of the second part, its successors or assigns, shall be relieved from the obligations of this contract during the continuance of said strike.

"The said party of the first part, its successors and assigns, in consideration of the premises hereby agree to pay monthly in the usual and ordinary custom of business, to the said party of the second part, its successors and assigns, the sum of Fifty-Two Cents (52¢) for each and every ton of two thousand pounds of screenings so delivered by the party of the second part, its successors or assigns, as hereinbefore set forth; and also to pay at the same rate for all screenings delivered to it by the said party of the second part since the first day of October, A. D. 1900.

"The party of the second part, its successors and assigns hereby covenant and agree, that at the expiration of this lease they will, within sixty (60) days thereafter, remove said tramway or bridge from the land of the first party or its successors or assigns.

"It is further mutually agreed by the parties hereto and their successors and assigns, that the party of the second part, its successors and assigns, shall have the right to go upon the land of the first party where said tramway or bridge is erected for the purpose of making all needful and reasonable repairs and improvements to the said tramway or bridge during the continuance of this lease.

"The covenants and agreements herein contained shall extend to and be binding upon the successors and assigns of the parties hereto.

"In witness whereof, the party of the first part has caused the hands of its President and Secretary, respectively, and the party of the second part has caused the hands of its Vice-President and Secretary, respectively, to be hereunto subscribed and their re-

spective corporate seals to be hereunto affixed; and the said officers do hereby, each for himself, expressly certify that they have full right and lawful authority to execute and deliver this Indenture in duplicate.''

The parties continued to operate under the foregoing agreement from the making thereof until the present time. On or about June 16, 1936, the defendant served notice upon the plaintiff of its intention to wreck and remove the tramway. The plaintiff replied thereto insisting that under the above contract the defendant had no right to wreck and remove the tramway. In answer to this contention on the part of the plaintiff, the defendant replied that it had made other arrangements for the disposition of the refuse from its mine and had no further use for the overhead tramway, stating that it would be unable to furnish any further coal to plaintiff after April 10, 1937. Following this, plaintiff brought its complaint to restrain the defendant from wrecking the tramway and to compel it to deliver to plaintiff such coal screenings as it might desire for manufacturing purposes.

The only question presented by this appeal is the action of the trial court in granting the motion of the coal company to dismiss the complaint.

The manifold transactions of man are represented by contracts. They are in as varying form as language will permit and as the individual choice of the parties may be. For the foregoing reasons, it is frequently difficult to determine whether under the terms of a particular contract, both parties are bound. A contract in its nature and character and according to the intention of the parties, should involve and impose a reciprocity of obligation and duty. One of the essential equitable rules, to which, however, there are exceptions, is that a contract to be specifically enforceable must be mutually binding upon the parties. In other words, mutuality of remedy as well as mutuality of

obligation, is often, though not always, essential. A court of equity as a general rule, will not enforce a specific performance of a contract by mandatory injunction, where the power rests in the plaintiff to nullify the relief granted. *Witkowsky v. Affeld,* 283 Ill. 557; *Morris v. Curtin,* 321 Ill. 462; *Harris v. Nelson,* 331 Ill. 225. It has been said: "Courts of equity never decree a specific performance of contract where the decree would be a vain or imperfect one." *Werden v. Graham,* 107 Ill. 169, 179, 180. Where one of the contracting parties has the right to terminate the contract, mutuality is generally lacking. *Joliet Bottling Co. v. Joliet Citizens' Brewing Co.,* 254 Ill. 215; *Gage v. Village of Wilmette,* 315 Ill. 328. Furthermore, the contract should be definite. *Higbie v. Rust,* 211 Ill. 333; *Tryce v. Dittus,* 199 Ill. 189; *Barker v. Hauberg,* 325 Ill. 538; *Klein v. Hodgdon,* 323 Ill. 440. As a general rule equity will not enforce a contract unless there is mutuality of remedy. *Barker v. Hauberg, supra; Africani Home Purchase Loan Ass'n v. Carroll,* 267 Ill. 380.

An injunction to prevent the breach of a contract is often the equivalent to a decree for its specific performance. *Dills v. Doebler,* 62 Conn. 366, 26 Atl. 398, 20 L. R. A. 432; *Muncie Natural Gas Co. v. Muncie,* 160 Ind. 97, 60 L. R. A. 822; *Joy v. St. Louis,* 138 U. S. 1, 34 L. Ed. 843. In this respect it is stated in High on Injunctions, Vol. 2, sec. 1106 (4th ed., ch. 19, on injunctions with reference to contracts), as follows: "While the remedy for past violations of contract is to be sought only in courts of law, the protection of contract rights and the enforcement of specific covenants, are matters which are properly cognizable in courts of equity. The jurisdiction by way of interlocutory injunction to restrain the violation of contracts, is based upon the necessity of protecting the legal right, and is exercised for the prevention of all irreparable mischief. To warrant a court of equity in interfering, the con-

tract itself must be free from doubt, and the injury apprehended from its violation must be of such a character as not to be susceptible of adequate compensation in damages at law. And a doubt as to the correctness of the construction of the contract on which the injunction is asked is sufficient ground for refusing to interfere.'' It is further stated by the above authority (sec. 1109), ''It has frequently been held that the contract concerning which the injunction is sought, must be of such a character as to be susceptible of specific enforcement by decree.'' It has been held to be the rule in this State that a suit to enjoin the violation of a contract is governed by the same rules as a suit to enforce specific performance. *Ulrey v. Keith,* 237 Ill. 284, 290; *Barker v. Hauberg, supra.,* p. 546; *Wurn v. Berkson,* 305 Ill. 231, 236. In this connection it was said in *Dills v. Doebler, supra,* ''An injunction to prevent the breach of a contract is a negative specific performance of that contract; and the jurisdiction of equity to grant such an injunction is substantially coincident with its jurisdiction to compel a specific performance by an affirmative decree.''

The remedy by specific performance is not always and in all respects a matter of strict right. It is largely a matter of sound discretion and will be granted or denied as the justice and right of the particular case shall seem to the court to require. *Baltimore & O. S. W. R. Co. v. Brubaker,* 217 Ill. 462, 469; *Sutton v. Miller,* 219 Ill. 462, 464; *Raginsky v. Lawler,* 313 Ill. 441, 447; *Africani Home Purchase Loan Ass'n v. Carroll, supra; Thackaberry v. Kibbe,* 284 Ill. 199. In matters of this kind the doctrine of general rule is by no means inflexible, and each case presented must be viewed in its own light. The court has no arbitrary discretion to deny relief. *Ullsperger v. Meyer,* 217 Ill. 262; *Anderson v. Anderson,* 251 Ill. 415.

It appears here that the coal company was the possessor of a right to the continuing use of a right of way

over plaintiff's land. It insists that it is not bound to continue in the enjoyment of such right for any definite period of time, and that although it might continue to avail itself of such right, yet it is no more bound to continue in the enjoyment thereof than is the plaintiff bound to purchase coal from the defendant. It is urged by appellee that the appellant seeks to obtain affirmative equitable relief under an instrument, which so far as the relief sought is concerned, it could nullify any decree in its favor, as it is not bound by the instrument to buy any coal from the defendant. Appellee urges that since appellant is not obligated to buy any coal, that it is therefore seeking a mandatory injunction to establish a right which it is in no way obligated to carry out.

An agreement to sell to another such of the seller's goods, wares and merchandise as the other might from time to time desire to purchase, is lacking in mutuality because it does not bind the buyer to purchase any of the goods of the seller, as such matter is left wholly at the option or pleasure of the buyer. *Willard Sutherland & Co. v. United States,* 262 U. S. 489, 67 L. Ed. 1086; *Atwater & Co. v. United States,* 262 U. S. 495, 67 L. Ed. 1089; *Cohen v. Clayton Coal Co.,* 86 Colo. 270, 281 Pac. 111, 74 A. L. R. 467; *Schlegel Mfg. Co. v. Peter Cooper's Glue Factory,* 231 N. Y. 459, 132 N. E. 148, 24 A. L. R. 1348 (also annotations in 14 A. L. R. 1303, *et seq.*).

Under the circumstances, the chancellor was warranted in entering the order dismissing appellant's complaint for want of equity, and the same is affirmed.

*Order and judgment affirmed.*